JOHN H. THOMPSON v. THE FLINT &' PERE MARQUETTE
RAILWAY COMPANY.

*Injury from condition of track—Contributory negligence.*

1. In actions on the case for negligent injury the plaintiff must allege in
   his declaration and prove on the trial that the injury complained of
   was occasioned by defendants' negligence, particularly specifying
   the duty and the breach thereof which constituted negligence, and
   averring also that plaintiff himself was in the exercise of ordinary
   care and did not by his own negligence contribute to the injury.

2. While a railway track was being raised at a highway crossing, a man
   led his horse across the rails.    A hind wheel of his buggy scraped
   the second rail and the horse became frightened, ran away and
   injured him.    He sued the company and showed that although, in
   anticipation of danger he slowly led the horse across the first rail to,
   prevent the wheel from sliding, it did not occur to him to check the
   horse in crossing the second. *Held,* that the averment in his declara-
   tion that he "took the horse by the bits, and *attempted* to lead him
   gently and carefully over said railroad at said crossing" is not a suffi-
   cient averment that he was in the exercise of ordinary care, and free
   from negligence contributing to the injury; *held also.* that by his own
   showing his negligence was such as to contribute to the injury, and
   the case should have been taken from the jury and a verdict ordered
   for defendant.

Error to Genesee.    (Newton, J.)    June 4.—June 10.

CASE.    Defendant' brings error.    Reversed.

*William L. Webber* for appellant.    It is a well settled principle in pleadings that defects in substance are fatal, and cannot be cured by pleading over; the material facts must be alleged :   1 Chit. Pl. [p. 672] ch. 10 ; *Stoflet v. Marker* 34 Mich. 313 ; *Kean v. Mitchell* 13 Mich. 213 ; *Delashman v. Berry* 21 Mich. 521 ; *Aldrich v. Chubb* 35 Mich. 350 ; *Marquette &c. R. Co. v. Marcott* 41 Mich. 433 ; *F. & P. M. Ry Co. v. Stark* 38 Mich. 714 ; plaintiff in case for negligence, must prove that his own negligence did not contribute to the injury :   *L. S. & M. S. R. R. Co. v. Miller* 25 Mich. 274 ; absence of contributory negligence, therefore, is a material fact to be shown, and should be alleged : *Lalor v. C. B. & Q. R. Co.* 52 Ill. 401 ; *I. & St. L. R. Co. v. Evans* 88 Ill. 63 ; *I. P. & C. R. Co. v. Keely's Admr.* 23 Ind. 133 ; *J. M. & I. R. Co. v. Hendricks Admr.* 41 Ind. 48 ; *Jackson v. I. & St. L. R. Co.* 47 Ind. 454 ; no recovery can be had where a person knows of a defect in the highway, and then voluntarily undertakes the risk of passing over it, when he might avoid it by reasonable care and foresight; he proceeds at his own peril :   Angell on Highways (ed. 1857), p. 274, § 293 ; *Tisdale v. Norton* 8 Met. 388 ; *Brooks v. Buffalo &c. R. Co.* 25 Barb. 603 ; *Spooner v. Brooklyn City R. Co.* 31 Barb. 419 ; Whart. Neg. §§ 300, 400, 403, 804, 833 ; *Centralia v. Krouse* 64 Ill. 23 ; *Lovenguth v. Bloomington* 71 Ill. 238 ; *Wilson v. Charlestown* 8 Allen 137 ; *Durkin v. Troy* 61 Barb. 437 ; *Schaefler v. Sandusky* 33 Ohio St. 246 ; *Wood v. Andes* 11 Hun 543 ; *Belton v. Baxter* 54 N. Y. 245 ; *Penn. Co. v. Rathgeb* 32 Ohio St. 66 ; *Gribble v. Sioux City* 38 Iowa 390 ; *Fork's Town'p v. King* 84 Penn. St. 230 ; *Cornelius Admx. v. Appleton* 22 Wis. 635 ; *Hanlon v. Keokuk* 7 Ia. 490 ; *Griffin v. Mayor &c. of N. Y.* 9 N. Y. 460 ; where injury results from the fault of both parties, without any intentional wrong on the part of defendant, no action can be maintained : *Williams v. M. C. R. R. Co.* 2 Mich. 265 ; in cases arising between master and servant, where the servant has knowledge of the defect, and yet takes the risk he is precluded from recovery : *Swoboda v. Ward* 40 Mich. 420 ; *Day v. Toledo C. S. & Detroit Railway. Co.* 42 Mich. 525 ; *Ft. W. &c. R. R. Co. v. Gildersleeve* 33 Mich. 137 ; in charging the jury the court should keep in view a distinct definition of negligence as applicable to the

case on trial: Pierce on Railroads 322; *Bridges v. N. London R. Co.* L. R. 7 H. L. 213, 221: L. R. 6 Q. B. 377; *Metropolitan R. Co. v. Jackson* 24 Eng. 121; *Toomey v. London &c. Ry. Co.* 3 C. B. (N. S.) 146.

*Long & Gold* for appellee. In a Maryland case it was held that it is not negligence in law for one having a steady horse to endeavor to lead him over a way blocked with stones: *Mayor &c. of Baltimore v. Holmes* 39 Md. 243, cited in Cooley on Torts 671.

CHAMPLIN, J. This action is brought to recover damages for personal injuries received by the plaintiff by reason of the alleged negligence of defendant in not keeping a railroad crossing in repair. On the 21st of July, 1884, defendant caused its track to be repaired and raised at a crossing of a highway known as the "Tupper Crossing," on what is called the "Old Turnpike," between the village of Grand Blanc and the city of Flint, in the township of Grand Blanc, Genesee county. The repair was made necessary on account of a depression in the track at that place, and the work consisted of raising the ties and rails, and placing ballast beneath; raising the track some four or five inches immediately at the crossing, and gradually less in each direction. The work was done by the section men under the personal supervision of the section boss, Frank Dunn. They began in the morning at a point about ten rods south of the crossing, and raised the track until they reached the crossing, and then tore up the plank and raised the crossing. They also raised the track for a distance of about forty feet north of the crossing. The direction of the railroad track at the crossing was about north 22 degrees west, and that of the "Old Turnpike" about north 40 degrees west, making the angle at the crossing quite acute.

Shortly after ten o'clock in the forenoon, the plaintiff, who lived in the township of Grand Blanc, drove up from the south to the crossing, with a horse attached to a light single buggy, on his way over the "Old Turnpike" to the city of Flint. At that time (according to his testimony) he found five or six men at work on the crossing. The planks were taken up and the men had a long lever under the rails raising

the track. In order to loosen the ties the dirt near them had been removed and thrown outside the rails into the highway. The plaintiff got out of his buggy, and led his horse safely over the track, and went on to Flint, about seven miles north. After transacting his business at Flint, the plaintiff started back to Grand Blanc shortly after 1 o'clock in the afternoon, and drove directly back the same way in which he came, arriving at the crossing in question about two o'clock. At that time (as he says in his testimony) he found the men tamping the ties which had been raised north of the crossing. The planks of the crossing were still removed, and the rails and ties were raised two or three inches more than they were when he crossed before, making them about three or four inches above the natural surface of the road-bed, and leaving the ties out of the ground, or exposed, about half of the tie. Only a portion of the dirt had been replaced under the ties, and the tops of the rails were about seven or eight inches above the top of the dirt inside the rails, and the dirt was a little lower on the outside.

The plaintiff on his cross-examination testified as follows :

"The mare is rather of a nervous temperament—quick. I considered her entirely manageable."

*Question.* Was she hard-bitted ?

*Answer.* Well, I had considered her so previous to that time, or about that time. I was about four rods from the railroad track when I got out of the buggy ; I began to descend the grade in the road. I got out because I knew from experience that vehicles were liable to slide on those rails. I have been turned over on that crossing with the planks in, several years before, and that is the reason I got out and led my horse over. On my way home I did not speak to Frank Dunn or any of the men until after the accident. I saw them before I got out of the buggy. They were near enough so I could have called them. I did not call Frank and ask him to put in some plank so I could get over, because I didn't consider it was necessary. I asked him in the morning if I could get over there with safety, and he told me he thought I could. Others had crossed. I had my own experience going down to guide me coming back. Coming to Flint, I went over substantially the same angle that I crossed going back, as near as may be. The wheels did not slide when I was coming towards Flint.

*Q.* Then you first got out of your buggy, as I understand, back about four rods from the track, with your right hand behind the chin of the horse, or behind the lower jaw of the horse, you took both reins in your right hand and walked forward, leading your horse?

*A.* I think I did. I think—I am sure I did hold.

*Q.* Your left hand hanging loose at the time?

*A.* Yes, sir. I walked down to the rail at a natural walk. When I came so that my wheels were about to strike the rail I turned and looked back to see how they were going to strike. I still had hold with my right hand. When I looked back to see how the wheels were going to strike, the forward wheels cleared the west rail all right. I could not say whether the hind wheels had got over before the forward wheels struck the next rail. I could not tell the position of the hind wheels, but I saw the front wheels between the rails. I did not see the front wheels when they struck the second rail. I was looking directly at the mare at that time. She had not appeared to be frightened or nervous at all up to this time. She was clear of the rail at that time. I don't know that I could swear positively whether it was the hind wheel or the front wheel that slid, but from the position of the shaft against my side, and the sound, I should say it was the forward wheel. I had no time then to turn. In fact, I could not look back after she made the first spring.

*Q.* When the wheels slid on the rail it made a creaking or squealing sound?

*A.* Yes, sir ; a grating.

*Q.* Sharp sound?

*A.* Yes, sir. Like the rubbing of one piece of metal on another.

*Q.* It was that sound that frightened the mare?

*A.* That, together with the shaft striking her flank—the shaft or thills striking her flank.

*Q.* If she had been going pretty slowly over there, the shaft could not have struck her flank with any particular force?

*A* It would have made a pretty good pressure against her side. The shafts did not come against her so when the wheels crossed the first rail, because the wheels did not slide there. It was the sliding that brought the shaft against her. I held up my speed in crossing over the rail. I recollect distinctly of holding up as the forward wheel struck the first rail, but whether I had increased in speed before I struck the other rail, I cannot say.

*Q.* Didn't you hold your horse back, so that as the wheels struck the rail it would rise slowly over it and come down slowly, without coming down with a ca-chunk?

*A.* I didn't think of that point. My object— I held up a little as it struck the first rail, to prevent the sliding.

*Q.* And then it didn't occur to you as to the second rail as it had at the first?

*A.* No, sir. As I got the horse over I remember of thinking that I was safe. When the wheels slid and the noise was made the horse jumped; she jumped a little sideways from me. I still held on with my right hand. The first spring she made I grabbed with both hands, but soon after had to let go with one hand to keep my position. I found I could not keep my feet, and I put one arm over her neck—that was my right arm. I did not do it at that time with a view of throwing myself onto her back. I did that to keep my feet and keep from being thrown down. I did not have hold of her mane; I had my arm over her neck. She is a low mare. I made a desperate attempt to stop her, and found that I was not gaining or succeeding in stopping her—was not checking her speed—and I then attempted to get upon her back, and I found that I could not do that; and as I came down I struck the ground with my feet, and made a desperate effort by throwing my feet ahead as far as possible to check her; and at the same time I calculated if I didn't check her that I had got to fall, and would throw my head clear of the wheels. If I had let go of her when she first jumped she would have cleared me, but the buggy would not. That was my first thought after the first spring.

*Q.* When she sprang a little from you, if you had made one step backwards, away from the road, don't you think you would have cleared the buggy?

*A.* I should not want to chance it. I did not figure out the position of the buggy at that time to see whether it was sliding towards me or away from me. I know now that it did certainly slide from me. I was on the left-hand side of the horse. At the time of the slide, I had hold of both bits with my right hand. Let me state one thing: that I supposed the buggy was turned over at that time, from the sound and the position of the shafts—from the feeling to me of the shafts as they slid against her body. I supposed the buggy was tipped over towards me or towards the left-hand side, which would have been the case had it tipped over there. I was going south-east towards the village. The road was at such an angle with the rails that it slid towards the village;

57 Mich.—20

and in tipping over it would have turned towards the left and· went on the side towards which I should be, which I supposed was the case. It was some five or six years before this that I had the other accident at this place. It did not come from the same cause. That came from the cutter shoe following up the rail instead of following the horse. It was the same cause that this was, only this was a cutter, and the rails were a little above the planking. The shoe of the cutter slid upon the rail, and tipped me over quicker than a flash. I went in there upon a walk; but I got right onto the crossing and saw a train of cars about four rods above me, and I then gave the horse the rein. He was frightened at the cars somewhat, and jumped across with a good deal of spirit, and I was somewhat surprised to find myself upon the ground and the cutter at one side. I tipped over towards the left. I was going towards Grand Blanc.

Q. If you had not thought that it was entirely safe to cross at this time, at this place, you would have asked Frank to put in the plank, would you not?

A. It didn't occur to me to ask him to put in a plank. If I had taken the road from Flint running east on the north side of section nine to the northeast corner of section nine, and then . gone south, I would have reached home without having to cross at this crossing. It didn't occur to me that there was any occasion for avoiding that crossing. I supposed the plank would be in, as they were working at the crossing when I came down—right at the crossing.

Q. When you got there and found they were not in, you still did not think there was any danger about it, did you?

A. I thought there was chances of the buggy sliding on those rails.

Q. If you had supposed there was any danger, how long a job would it have been for you to have unhitched the horse and led her over, and asked Frank to come and help you over with the buggy?

A. Perhaps ten or fifteen minutes. I didn't suppose but that I could have gotten across there in safety. If I had not, I should not have .undertaken it."

Counsel for the defendant requested the court below to take the case from the jury and nonsuit the plaintiff, for the reasons: (1) That the plaintiff could not recover, because his declaration did not allege that he was himself without fault or negligence; and (2) that, under the pleadings and proofs, giving them the most favorable construction for the

plaintiff which the law would warrant, the plaintiff was not entitled to recover.

But the court refused to charge as requested, and the jury found a verdict for the plaintiff and awarded him $500 damages. The exceptions to such refusal are covered by the first and second assignments of error.

The only averment in the declaration with reference to the plaintiff's exercise of due care is the following:

"And the plaintiff says that on, to wit, the twenty-first day of July, 1884, while he was necessarily and lawfully riding and driving along said highway, and had approached said crossing with his horse,—which was a horse well trained and broken, and of ordinary gentleness,—at about the hour of two o'clock in the afternoon of that day he alighted from his vehicle, then attached to said horse, and took said horse by the bits and attempted to lead him gently and carefully over said railroad at said crossing, and that while the said vehicle, attached to said horse, was passing over the rails of said railroad there, said horse became frightened by reason of said defective condition of said crossing, and violently ran a long distance with great speed, to wit, for the distance of twenty rods, and dragged the plaintiff along with said horse, and finally threw the plaintiff prostrate upon the ground, and said vehicle then and there passed over the legs and body of the plaintiff, and greatly bruised and injured him, and he thereby became sick, sore, lame and disabled for a long period of time, to wit, for six weeks, and still is sick, sore, lame and disabled by reason thereof, and has suffered great pain in body and mind, and by reason thereof was disabled from carrying on his business, which is that of a farmer, and has sustained great loss thereby; wherefore the plaintiff says that he is injured and has sustained damages to the amount of one thousand dollars, and therefore he brings suit."

In actions of this kind the plaintiff must allege in his declaration and prove upon the trial that the injury complained of was occasioned by the negligence of the defendant; specifying with particularity the duty and the breach of duty out of which the negligence arose, and also averring that the plaintiff was himself in the exercise of ordinary care, and did not by his own negligence contribute to the injury.

Does the averment in the declaration that plaintiff "took the horse by the bits, and attempted to lead him gently and carefully over said railroad at said crossing," constitute an averment that the plaintiff was in the exercise of ordinary care, and that he was free from negligence on his part which contributed to the injury? I think it does not. It merely avers an attempt to lead the horse carefully and gently over the railroad. It does not aver that he did what he avers he attempted to do. The plaintiff's own testimony shows the distinction clearly. The danger which he says he apprehended and which he should have guarded against, was the liability of the wheel of his vehicle to slide when it came in contact with the rail, and he says when the wheel struck the first rail he held up a little to prevent the sliding, but when his horse got over the second rail he thought he was safe, and it did not occur to him to go slowly over the second rail as he did the first. Had he exercised the same care in crossing the second rail he did in crossing the first, the probabilities are the accident would not have happened. His failure or neglect to do so was negligence, and the immediate cause of fright to the horse, and consequent injury. It is plain, therefore, that the averment in the declaration is not equivalent to that of absence or want of negligence on his part which contributed to the injury. The defect, however, is one that may be cured by amendment upon another trial, and as the whole merits of the case were gone into and all the evidence is returned, it is proper that we should consider the second objection urged against the recovery in the court below. This relates—*first*, to the negligence of the defendant; and *second*, to the contributory negligence of the plaintiff. The declaration states the negligence of defendant as follows:

" That on, to wit, the twenty-first day of July, 1884, at about ten o'clock in the forenoon of that day, the said defendant caused to be removed all the plank which, before and up to that time, had been laid between the rails of said railroad at said crossing, and also removed all the planks upon each side of the rails at said crossing ; and also dug out and removed the ballast, gravel and dirt at the approaches to said

crossing, and also the ballast and dirt which before that time had been placed between the rails at said crossing, leaving the rails and ties of said railroad elevated above the highway, so as to materially obstruct the passage over the same; and negligently, wrongfully and unnecessarily permitted the said plank, dirt and ballast at said crossing to remain so removed and in a condition perilous to public travel for a long time, to wit, for the period of four hours, and until about the hour of two o'clock upon the afternoon of said day; and did not restore or place said crossing, or any part thereof, in a condition fit or safe to cross over the same with teams or vehicles; and did not, between said hours of ten and two o'clock, provide any means whereby passers-by, and travelers with teams and vehicles, could safely pass over the same, as it ought of right to have done; and negligently left said crossing and permitted the same to remain during said period of four hours, in said dangerous and unsafe condition, and in a state which would naturally frighten horses of ordinary gentleness when passing over the same; and in a condition naturally tending to cause and occasion accident and injury to passers-by with vehicles and teams."

The evidence of the plaintiff showed that on his return from Flint the men engaged in working upon the track were so at work six rods from the crossing towards Flint; and upon cross-examination the defendant's witness Brown, who was civil engineer and road-master of the company, testified that if such was the distance it was practicable to put some plank down there, after having tamped in between the ties, before going six rods away. The section boss testified that they commenced raising the track about ten o'clock in the forenoon, at a distance of about ten rods south of the crossing, and raised it about forty feet north of the crossing.

The defendant had the right to raise and repair its track at the "Tupper Crossing," and to remove the plank for that purpose. It owed a duty to the public, in the exercise of this right, to not obstruct the travel upon the highway longer than was reasonably necessary to accomplish the purpose. The defendant's negligence upon this branch of the case, upon this disputed testimony, became a question which was proper to be submitted to the jury. But this alone, resolved in plaintiff's favor, would not entitle him to a verdict. He

must also show that he himself was in the exercise of ordinary care, and free from any negligence which contributed to the injury.    Upon this question there is no dispute in the testimony.    The only person who testifies tending to prove carelessness on the part of the plaintiff is the plaintiff himself.    If his testimony shows that the injury complained of was occasioned in part by his own carelessness, he cannot recover.    Upon this point the court instructed the jury as follows :

"But, though the work was not repaired at two o'clock and completed, if the plaintiff had knowledge of its dangerous condition, and with that knowledge, took the risks of getting across, without calling upon the servants of the company to aid him, and in the attempt to do so was injured, he cannot recover in this action against the defendant.    To entitle him to recover, it is not alone sufficient for him to prove that the defendant was in fault or guilty of negligence, but he must also by proof show you that he was not himself guilty of negligence or want of due care.    1f he, by his deliberate act, attempted to cross the track in the condition in which it was, and which was necessitated by the repair of the road, and was not unreasonably delayed, and he suffered injury thereby, then he cannot recover if his own conduct contributed to the injury complained of."

And again :

"But if the party complaining had knowledge or information of the dangerous condition of the road, and, notwithstanding such knowledge or information, coolly and deliberately takes the risks and chances, and while so taking them his horse starts and runs away from him, he cannot recover. He must, in order to recover, not only have been injured by the negligence of the defendant, but he must be free from negligence or want of due care on his part.    If his negligence or want of due care contributed to the injury complained of, he cannot recover."

We think the law thus laid down in the charge was correct as applied to the facts and circumstances of this case, but the error the learned circuit judge committed was in not directing a verdict for the defendant.    The plaintiff's testimony, above quoted, shows that he had knowledge of the dangerous condition of the track, and with that knowledge took the risk

of getting across; he knew of the particular danger from the liability of the wheels to slide when crossing the rails at that angle, and his evidence is conclusive that after he had carefully crossed the first rail with safety by exercising the requisite care, he neglected entirely to use due care in crossing the second rail, and such negligence was the proximate cause of the sliding of the wheel against the second rail, which frightened the horse and brought about the injury complained of.

The learned circuit judge should have charged, as requested by the defendant, that, upon the whole testimony, the defendant was entitled to a verdict. In denying this request he said that he was always loth to take the case from the jury, where any facts are involved in the controversy. But upon this branch of the case there were no facts involved, in the sense that there were any facts disputed. It rested upon plaintiff's own statement, and, giving to it the most favorable construction for him, it plainly showed that he was himself negligent.

The judgment must be reversed and a new trial granted.

The other Justices concurred.