MARJORIE ROMEO, *pro ami*,

*vs.*

BOSTON AND MAINE RAILROAD.

York. Opinion May 10, 1895.

*Railroad. Negligence. Gates. Crossing. Practice. Jury.*
*Stat. 1885, c. 377.*

The plaintiff, a young woman of nineteen years of age, in the full possession of her senses of sight and hearing, while walking on Main street in the city of Biddeford, across the track of the defendant corporation, was struck by the locomotive attached to a regular train on the defendant's road, and sustained certain injuries. Gates were maintained at the crossing in question, but at the time of the accident they were in disuse, because of alterations being made at that place, and were left open. A flagman was also stationed at the crossing, but a jury might be authorized from the evidence, to believe that, at the time and just before the train passed, he was not in a position to do the duty required of him in warning travelers of an approaching train. Plaintiff's witnesses estimated the rate of speed of the train, as it crossed Main street, at from thirty to thirty-five miles an hour. The plan, made a part of the case, shows that while the plaintiff was walking along Main street toward the track, for a distance of at least eighty feet before coming to the track, upon which this train was running, she had a plain view of the track in the direction from which it was coming for a great distance, obstructed only by a small gate-house which could only have shut off the view of a small portion of the track at any one time. She testified that before attempting to cross the track she neither looked nor listened for an approaching train. *Held:* That a jury would only be authorized, from evidence of these facts, to come to the conclusion that the plaintiff contributed to the accident by her own want of due care.

While the fact of open gates is a circumstance which a traveler may properly take into consideration, and upon which he may place some reliance, this does not relieve him of all care. This rule is especially applicable to the facts of this case, where the plaintiff was walking, with a generally unobstructed view of the track, and the slightest exercise of care upon her part would have prevented the accident.

Ordinarily the question of due care and of negligence is for a jury. This is necessarily so when the facts bearing upon these questions are in dispute or even when the facts are undisputed, and intelligent and fair-minded men

may reasonably differ in their conclusions; but it is not true where the facts are undisputed, and there is no evidence, or the evidence is too slight and trifling to be considered by the jury.

ON REPORT.

This was an action on the case by the minor plaintiff, a girl nineteen years old, to recover damages for injuries received by being struck by an east bound train while passing, about nine o'clock, P. M., July 17, 1893, along Main street in Biddeford where it crosses the defendant's railroad at grade.

The acts of negligence alleged in the declaration were the running of the train at a rate of speed in excess of that allowed by law, in the compact part of a city, where gates or flagmen are not provided ; also a failure to lower the arms of the gates which stood on both sides of the track, and the want of signals by the flagman stationed at the place.

The plaintiff testified that she, with another girl about her own age, had been visiting a merry-go-round located northerly of defendant's tracks and easterly of Main street, and was returning southerly across the tracks. It appeared that there were then two tracks in use across the street, and another in course of construction ; and the gates, which for some years had been in use there, were not then in operation because of the removal of the posts to be reset to cover the spur track then being constructed, and which occupied the ground where one of the posts had stood. Those upon the northerly side were detached from their posts, while one arm of those upon the southerly side remained erect upon the post and unused, that particular post not requiring resetting. They reached Main street from the lot where the merry-go-round was located, and a point about one hundred feet northerly of the tracks, and were walking slowly, side by side, the plaintiff upon the westerly side of her friend, toward the tracks.

The plaintiff appeared to have been familiar with the crossing, having lived in Biddeford most of her life, and crossed it many times. She said : "Just as we got on the sidewalk," she saw "gates up in the air. I did not pay much attention to it, and couldn't tell which side it was on." Her friend testified : "I saw one gate, and it was up." Neither heard whistle or bell,

or saw head-light or train, until as the plaintiff said : "It was on us — I lost my senses ;" — her friend said : "almost on us. I screamed and started to run — don't remember what I did." The friend was seized by a person present who pulled her in front of the train across the track to the southerly side. Plaintiff did not get over, but was struck.

.It appeared from a plan admitted in the case that the coming train, which was on the southern-most track, was visible from any point in most or all of the way from the point where the plaintiff entered upon the street to the crossing, about two thousand four hundred and twenty feet.

Several witnesses saw the head-light burning, and heard the whistle, the usual crossing whistle, of the coming train, and saw the flagman with flag or lantern in the street near his house upon the northerly side of the crossing ; and one heard him cry out a warning. One saw the train about one hundred and fifty yards distant ; another saw it about two hundred and fifty yards away.

The other material facts appear in the opinion.

*B. F. Hamilton and B. F. Cleaves*, for plaintiff.

Defendant's negligence undeniable : This crossing is near a compact part of the city of Biddeford, and yet no flagman was on duty, as required by law ; or if one was assigned for duty there he flagrantly omitted to perform his duties. No whistle was sounded, no bell rung, and the train came down to and over the crossing at a far greater rate of speed than is allowed by law, in the absence of gates and flagman. The absence of flag-man or gates was negligence *per se*. *State* v. *B. & M. R. R.* 80 Maine, 431, and cases cited by State ; *Hooper* v. *Same*, 81 Maine, 260 ; Wood Ry. Law, p. 1313, note ; *Sweeney* v. *O. C. R. R.* 10 Allen, 368.

Railroads are bound to exercise reasonable care at crossings. And reasonable care upon the part of the company is the care ordinarily observed at that particular crossing. *Bradley* v. *B. & M. R. R.* 2 Cush. 539.

The railroad company is bound to use all reasonable care besides that of ringing bells, etc., to avoid collision when its

engines are crossing a way.   *Linfield* v. *O. C. R. R.* 10 Cush. 569.

The plaintiff was not so lacking in the exercise of ordinary care that there is no question to be submitted to a jury :

1. Her failure to look and listen more carefully than she did, was excused by the negligence of the railroad, whose negligence placed her in the position of danger where she was injured ; and by the circumstances of the case.   *State* v. *B. & M. R. R.* 80 Maine, 430 ; *Hooper* v. *Same*, 81 Maine, 260.   It may be true that, under ordinary circumstances, it is the duty of a person approaching a railroad-crossing to look and listen for the approach thereto of a train, before attempting to pass over. But whether or not a failure so to do in a given case, is negligence, depends upon all the facts and circumstances in the case ; and upon these facts and circumstances a jury is to decide, under proper instructions, the question of whether or not, in the particular case, the plaintiff exercised ordinary care.   Ordinary care is that degree of care which a person of ordinary intelligence and discrimination, would exercise under like circumstances.   *Butterfield* v. *West. R. R.* 10 Allen, 532 ; *Plummer* v. *E. R. R.* 73 Maine, 591, and cases.   It is not necessary to prove affirmatively that plaintiff looked and listened before attempting to cross ; whether or not she used proper precautions is to be determined by all the circumstances in the case.   Wood Ry. Law, p. 1317, note ; *Penn. R. R.* v. *Webber*, 72 Penn. 27.

When the usual signals are not given, a traveler will not be held to that degree of diligence that he would had the company discharged its duty.   The traveler has a right to expect that the company will discharge its duty, and comply with the law. Wood Ry. Law, p. 1319, 1328, and cases in notes ; *Com.* v. *Fitchburg R. R.* 10 Allen, 189 ; *Whitton* v. *C. & N. W. R. R. Co.* 13 Wall. 270 ; *Chaffee* v. *B. & L. R. R.* 104 Mass. 108 ; *Hinckley* v. *Cape Cod R. R.* 120 Mass. 257, 263, and cases.   If plaintiff used the precautions and vigilance which, according to common experience, men of ordinary prudence exercise under like circumstances, and there was a reasonable

excuse for her failure to more carefully.look and listen, she cannot be said to be guilty of negligence as a matter of law for failing to look and listen. *Wheelock* v. *B. & A. R. R.* 105 Mass. 203, 207 ; *Tyler* v. *N. Y. & N. E. R. R.* 137 Mass. 238.

2. This plaintiff has a right to have the question of whether or not she was in the exercise of ordinary care passed upon by a jury. Whether or not she was in the exercise of due care and diligence, is wholly a question for the jury. *State* v. *B. & M. R. R.* 80 Maine, 430, 433, and cases cited by State. The evidence discloses that she exercised some care, in looking for the gates, and whether or not she was in the exercise of ordinary care is plainly a question for the jury. *Tyler* v. *N. Y. & N. E. R. R.* 137 Mass. 238, 241. Whether or not she was induced by the open gates and the absence of a flagman to come upon the crossing in an attempt to pass over, is a question for the jury. Ordinary care of plaintiff need not be proved affirmatively. If, in view of all the circumstances, she did what a person of ordinary prudence would have done, that is all that is required : and this is a question for the jury. *Mayo* v. *B. & M. R. R.* 104 Mass. 137 ; *Hinckley* v. *Cape Cod R. R.* 120 Mass. 257, 262.

Whether or not, under all the circumstances, she was careless in failing to look and listen more carefully than she did, is a question which the jury must decide. The surrounding circumstances, and the whole conduct of the plaintiff, will ordinarily afford a ground for such a variety of inferences as to make the verdict of a jury the only proper means to determine the essential fact. However indicative of carelessness the circumstances may seem to the court, if there be any evidence upon which a jury may find that reasonable care was in fact exercised, it is proper to submit it to them. *Mayo* v. *B. & M. R. R.* 104 Mass. at p. 142 ; *French* v. *Taunton R. R.* 116 Mass. 541 ; *Gahagan* v. *B. & L. R. R.* 1 Allen, 187 ; *Elkins* v. *B. & A. R. R.* 115 Mass. 190, 199 ; *Warren* v. *Fitch. R. R.* 8 Allen, 227 ; *Meesel* v. *Lynn R. R.* 8 Allen, 234 ; *Gaynor* v. *O. C. & N. R. R.* 100 Mass. 208, 212 ; *Williams* v. *Grealy*, 112 Mass. 79 ; *Craig* v. *N. H. & H. R. R.* 118 Mass. 431, 437.

*G. C. Yeaton*, for defendant.

*State* v. *B. & M. R. R.* 80 Maine, 430, and *Hooper* v. *Same*, 81 Maine, 260, will doubtless be cited by plaintiff as authority for her position here.

How little countenance these cases afford this plaintiff may be determined from the following six particulars, in all of which both those cases differed essentially from the case now at bar; viz : in both those, (1) deceased was found by the court to have both "looked and listened;" (2) deceased · approached the crossing from the southerly side, upon which the view of the railroad was "mostly obstructed" until within about fifteen feet of the track on which came the train; (3) he was riding in a wagon; (4) the rate of speed of the train was unlawful; (5) there was no flagman on duty; (6) deceased saw all four arms of the gates erect. While here, this plaintiff (1) neither looked nor listened; (2) approached the crossing from the northerly side, and had a practically unobstructed view of the track for nearly half a mile, while (3) she was walking "slowly" nearly one hundred and twenty-five feet; (4) the speed of the train was not unlawful; (5) a flagman was there on duty; (6) she saw but one arm of the four erect.

In a multitude of reported cases, each one of the first five of the foregoing enumerated particulars has alone been held conclusive as to a plaintiff's contributory negligence. What shall we say of the combined force of all five, with the superadded weight of the sixth, whatever that may be?

It is too much to say that, because she had seen one arm of the gates erect when at some one hundred and twenty-five feet distant from the track, she was thereafter excused from any and all intelligent attention to so much so easily heard and seen. Moreover, she says she did not pay "much attention" even to the arms she saw erect.

In addition to our own case, *Allen* v. *M. C. R. R.* 82 Maine, 111, the following recent cases elsewhere illustrate the application of these now universally admitted general rules to facts more or less closely similar to those here; *Ely* v. *Pittsburg C. C. & St. L. Ry.* (Penn. Nov. 1893), 27 Atl. Rep. 970;

*West Jersey R. Co.* v. *Ewan* (N. J. Dec. 1893), *Id.* 1064; *Mark's Adm'r* v. *P. R. R. Co.* 88 Va. 1; *Magner* v. *Truesdale* (Minn. 1893), 55 N. W. Rep. 607; *Shufeldt* v. *Flint & P. M. R. R. Co.* (Mich. 1893) *Id.* 1013; *Banning* v. *Chic. R. I. & P. Ry. Co.* (Iowa, 1893) 56 N. W. Rep. 277; *Tucker* v. *N. Y. C. & H. R. R. R. Co.* 124 N. Y. 308; *Fowler* v. *N. Y. C. & H. R. R. R. Co.* 74 Hun. 141.

In *Merrigan* v. *B. & A. R. R.* 154 Mass. 189, 191, the jury were instructed:

"If he approaches a crossing where there are gates which by their shape and appearance indicate to him that it is the custom to shut them when trains pass, or that they are there for the purpose of being shut when trains pass, he may take that fact into consideration on the question of how much he himself must look, but it does not excuse him from looking. He must look out for himself, and has no right to rely wholly upon the gates. On the question of how far he shall look, and to what extent he shall look, he may properly take the existence of the gates into consideration. . . . If he looked, he must be held to have seen that which was plainly to be seen where he looked, . . . there being no suggestion of a defect of vision on his part; and if, seeing the engine approaching the highway, he chose to start across and take his chances, the damage must rest where it falls, and is in no way attributable to the railroad corporation in such manner that he can recover of them for such damage."

This plaintiff was in no way endangered, or embarrassed, or confused by any negligent act or omission on the part of defendant; she had thus no occasion for any sudden election between a threatened danger and possible escape; there was no emergency which called for haste; but, solely of and by reason of her own unprompted, voluntary and heedless disregard of plainly audible signals, and more distinctly visible and unmistakable evidence of an approaching train, she recklessly encountered the desperate risk she could not have been ignorant of.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

WISWELL, J. This case comes to the law court upon a report of the plaintiff's testimony with the stipulation that, if upon this testimony the action can be maintained, it shall be sent back for trial, otherwise a nonsuit is to be ordered.

About nine o'clock on the evening of July 17th, last, the plaintiff, a young woman of nineteen years of age, while walking on Main street, in the city of Biddeford, across the railroad tracks of the defendant corporation, was struck by a locomotive attached to a regular train on that road, and sustained certain injuries.

In order for her to recover for these injuries, it is incumbent upon her to prove negligence upon the part of the defendant corporation, and that no negligence upon her part contributed to the accident.

It is admitted that this crossing was near the compact part of the city of Biddeford, consequently the running of the train across this street at a greater speed than six miles an hour, unless there was either a gate or a flagman at the crossing, would be in violation of chap. 377, Laws of 1885, and in and of itself negligence. Although gates were maintained at this crossing, upon the night of the accident they were in temporary disuse because of work being done at that particular place, and were left open. And although a flagman was stationed at the crossing, a jury might be authorized to come to the conclusion from the evidence before us, that at the time and just before this train passed, he was not in a position to do the duty required and expected of him in warning travelers of an approaching train. Witnesses for the plaintiff have estimated the speed at which this train was running at from thirty to thirty-five miles an hour. So that as to the first proposition, which is necessary for the plaintiff to prove, we think there was sufficient evidence to entitle her to go to the jury.

But it is equally as important and necessary that the plaintiff should prove that there was no negligence upon her part which contributed to the result. In our opinion she has not only failed to do this but has shown an entire absence of all care.

A railroad track across a street or highway is a recognized place of danger. No person should cross it without taking such precautions as experience has shown are necessary in order to do so with safety. The standard of care required is such as ordinarily careful and prudent persons would exercise, having in view all the known dangers of the situation. This court, as well as the courts of most other states, has gone further than to establish a general standard of care required of a traveler in crossing a railroad track, and has laid down the rule that it is negligence *per se* for a person to cross a railroad track without first looking and listening for a coming train. *Chase* v. *Me. Cent. Railroad Co.* 78 Maine, 346.

The plaintiff was in the full possession of her senses of sight and hearing, and yet she says herself that she neither looked nor listened for an approaching train. If she had exercised the slightest care and had listened for a single moment, the noise of the rapidly approaching train would have given her ample warning ; or, if she had looked before she had arrived at the track, she could have seen the train for a great distance, as she testifies upon cross-examination.

While the testimony gives no distances, the plan which is made a part of the case shows that while the plaintiff was walking along Main street toward the track, for a distance of at least eighty feet before coming to the track upon which this train was running, she had a plain view of the track in the direction from which it was coming for a great distance, obstructed only by a small gate-house which could only have shut off the view of a small portion of the track at any one time.

But the plaintiff's counsel, while admitting the general and well-established rule as to the amount of care required of a traveler in crossing a railroad track, and the particular duty in such a case of looking and listening, contends that the open gates at this crossing, where gates had long been maintained, relieved the plaintiff from the exercise of the care which would otherwise have been required. *State* v. *B. & M. Railroad*, 80 Maine, 430, and *Hooper* v. *B. & M. Railroad*, 81 Maine, 260, are relied upon in support of this proposition.

It is undoubtedly true that the fact of open gates is a circumstance which the traveler may very properly take into consideration; a person of ordinary care would do so to some extent, but it does not relieve the traveler from all care. As was said by Chief Justice PETERS in *State* v. *Railroad, supra,* " while the neglect of the company to perform its duties does not excuse the traveler in a neglect of the duties and degree of care which the law imposes on him, still, in making his calculations for crossing a railroad track safely, he is often justified in placing some reliance on a supposition that the company will perform the obligation resting on it, where there is no indication that it will do the contrary."

Again it is said in that opinion : " Of course, full reliance cannot always be placed on an expectation that a railroad company will perform its duties, when there is any temptation to neglect them, because experience teaches us that it would not be practicable to do so. But such an expectation has some weight in the calculation of chances, greater or less according to the circumstances."

In both of the cases cited, the travelers were driving in a carriage, the view of the track was obstructed and the court held that a jury might be authorized in finding that the person injured, in each case, did look and listen. Here the plaintiff was walking, the view of the track was generally unobstructed, and the plaintiff testifies that she neither looked nor listened.

The weight that should be given to the negligence of a railroad company, in not properly operating its gates, depends to a very marked degree upon the circumstances of each case. A person approaching a railroad-crossing, in a carriage, with a view of the track obstructed, might, in the exercise of ordinary care, be led to rely upon the upright arms of a gate until it was too late to control his horse or to turn him aside ; but it is difficult to see how a person walking, with a sufficiently plain view of the track, could be thus misled to such an extent as to come into collision with a rapidly moving train.

It is further contended in behalf of the plaintiff that this is a question which should be passed upon by a jury. Ordinarily the

question of due care and of negligence is for the jury. This is necessarily so when the facts bearing upon these questions are in dispute, or even when the facts are undisputed and intelligent and fair-minded men may reasonably differ in their conclusions. But it is not true where the facts are undisputed, and there is no evidence, or the evidence is too slight or trifling, to be considered by a jury. In such cases it is not only proper but it is the duty of the court to order a nonsuit. *Elwell* v. *Hacker*, 86 Maine, 416; *Railroad Co.* v. *Hefferan,* N. J. L. Atlantic Reporter, Vol. 30, p. 578.

In this case a jury would be authorized to come to only one conclusion, that the plaintiff was guilty of negligence which contributed to the accident.

*Plaintiff nonsuit.*