EDWIN DAWE, ADMINISTRATOR OF THE ESTATE OF ANNA McINTOSH, DECEASED, v. THE FLINT & PERE MARQUETTE RAILROAD COMPANY.

*Railroad companies—Accident at crossing—Open gates—Contribu-tory negligence.*

1. Plaintiff's intestate is held to have been guilty of such negligence, in walking a distance of 48 feet after passing an open railroad gate at a city street crossing, and before reaching the track, where she was struck by a passenger train, during which time she could have seen the train for a distance of 425 feet if she had looked in the direction from which it was coming, as to bar a recovery, unless it should be held that the fact that the gate was not let down excused her from exercising care in crossing the track.[1]

2. The rule established by *Richmond v. Railway Co.*, 87 Mich. 374, and *Evans v. Railroad Co.*, 88 Id. 442, that a party approaching a railroad track has a right to rely upon the absence of such warnings of danger as it is shown to be the custom of the railroad company to give, will not excuse the negligence of the decedent, who testified that she thought the gates did not fall for a yard engine, for, if she was looking for a yard engine, as she testified, she could as easily have seen the passenger train.

---

[1] As to duty of looking and listening, or stopping and listening, before crossing or attempting to cross railroad tracks, see *Jensen v. Railroad Co.*, 102 Mich. 176, 181, and note.

Error to Saginaw. (Hart, J., presiding.) Argued June 28, 1894. Decided October 16, 1894.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinions.

*E. L. Beach*, for appellant.

*Hanchett, Stark & Hanchett*, for defendant.

MONTGOMERY, J. Plaintiff's intestate, Anna McIntosh, instituted this suit to recover for personal injuries. The circuit judge directed a verdict for the defendant. She has since deceased, and her administrator brings the case here for review.

Deceased testified that she was struck by an incoming train while crossing the railway track of defendant. The evidence shows that, traversing a distance of 48 feet before she reached the track in question, and after passing the gate, she could have seen the approaching train for a distance of 425 feet at least, had she looked.

The case is ruled by *Gardner v. Railroad Co.*, 97 Mich. 240, and the cases there cited, unless it shall be held that the fact that the gate was not let down excused the deceased from exercising care in crossing the track. The plaintiff relies upon the cases of *Richmond v. Railway Co.*, 87 Mich. 374, and *Evans v. Railroad Co.*, 88 Id. 442. The rule established by these cases is that a party approaching a railroad track has a right to rely upon the absence of such warnings of danger as it is shown to be the custom of the railroad company to give. But in the present case the deceased herself testified that she thought the gates did not fall for a yard engine. As the circuit judge very pertinently said:

"If she was looking to see a yard engine, of course she could see a regular train as easily."

The judgment will be affirmed, with costs.

LONG, GRANT, and HOOKER, JJ., concurred with MONT-GOMERY, J.

McGRATH, C. J. *(dissenting).* Plaintiff's intestate was struck by an incoming passenger train while crossing the railway tracks on Washington avenue, in the city of Saginaw, at about 20 minutes past 5 o'clock on the evening of December 17, 1891. The court directed a verdict for defendant, on the ground that plaintiff's intestate was guilty of contributory negligence. A sketch of the crossing will be found on the following page.

The testimony tended to show that Washington avenue is a leading thoroughfare. The deceased was walking south on the sidewalk, on the east side of the avenue, and was struck by a train going east on the "main line Bay City Division." There are three gates,—one about 60 feet north of the point where deceased was struck, one south of the Flint & Pere Marquette main line, and one near Potter street. These gates are raised and lowered from a tower some distance away. When down, they do not extend across the sidewalk. The south end of the machine shop is about 15 feet from the first track. The first building west of Washington avenue and north of the tracks is about 175 feet directly north from the place where deceased was struck, is 300 feet long, and 2 stories in height. The deceased testified that, just before she passed the railroad gates, she looked to see if they were down; that the gates were up; that when she got past the gates, so she could see the depot, she looked in that direction, and then looked the other way, to see if she could see a yard engine coming; that she knew that, if the gates were up, no train was coming, but she thought the gates did not fall for a yard engine; that she did not see or hear the train until it was within a few feet of her, when she was frightened,

and did not do anything. The engineer testified that he was on the lookout, but did not see deceased until he got within three feet of her, when he immediately applied the brakes, and stopped the train as soon as it could be stopped; that, coming around the curve, the reflection of the headlight was thrown to the south. A city ordinance prohibited the running of trains within the city limits at a rate of speed to exceed 6 miles per hour. While the engineer and fireman, testify that the rate of speed was not to exceed 10 miles per hour, it appeared that the train did not stop until it had reached a point 200 feet east of Washington avenue; and one of defendant's witnesses testified that, if the train had been running but 8 or 10 miles per hour, the brakes would have brought it to a stop in 50 feet, and that, if it had been running 15 or 20 miles an hour, it would have come to a full stop in 100 feet. The fireman testified that the whistle was not blown after they left Kirk street, which was 1,500 feet away, and north of the place of collision.

While the facts in the present case differ in some particulars from those in *Richmond v. Railway Co.*, 87 Mich. 374, and *Evans v. Railroad Co.*, 88 Id. 442, I do not think that there is such a substantial difference as warrants the conclusion in the present case that the deceased was, as a matter of law, guilty of contributory negligence. I am not prepared to say arbitrarily that an ordinarily prudent person would not place some reliance upon the fact that the gates were open. Here, as in those cases, there was the open gate, and, in addition, the curve, the high speed of the train, the absence of warning signals, and evidence that some degree of care was exercised. As is said in a recent case in the federal court:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall

constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined.     *     *     *     The policy of the law has relegated the determination of such questions to the jury, under 'proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs." *Railway Co. v. Ives*, 144 U. S. 417.

The mere fact that deceased thought that the gates were not lowered for yard engines, which usually make the yard movements at a low rate of speed, and was on the lookout for the same, would not suggest the degree of care necessary to protect herself from an unexpected and greater danger.

The judgment should be reversed.