## Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Heine, Administrator.

[No. 3,846.   Filed January 8, 1902.]

Railroads.—*Injury at Crossing.*—*Signal Bells.*—Where a railroad company maintained signal bells at a crossing for the purpose of warning travelers of approaching trains, a traveler approaching the crossing had the right to presume that no train or locomotive was approaching when the bells did not ring, but he was not thereby excused from ascertaining for himself whether a train or locomotive was in fact approaching.   *p. 167.*

Same.—*Injury at Crossing.*—*Signal Bells.*—Where in an action against a railroad company for injuries sustained at a crossing it was shown that defendant maintained signal bells at the crossing which did not ring when decedent attempted to cross the tracks, such failure was a circumstance to be considered by the jury in determining the ultimate question of negligence.   *p. 167.*

Same.—*Injury at Crossing.*—*Verdict.*—*Special Finding.*—Where plaintiff's decedent while attempting to cross three parallel railroad tracks was struck by a car on the third track and killed, an answer to an interrogatory that there was no evidence that after crossing the first track he looked or listened for the approach of a locomotive or train is an admission that the finding in the general verdict that he did look and listen had no evidence to sustain it.   *pp. 167, 168.*

From Boone Circuit Court; *B. S. Higgins*, Judge.

Action by Hubert E. Heine, administrator, against the Cleveland, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, defendant appeals.   *Reversed.*

*J. T. Dye* and *L. J. Hackney*, for appellant.

*O. B. Jameson, F. A. Joss, A. J. Shelby, J. G. Adams, G. R. Estabrook* and *A. P. Hynes*, for appellee.

Robinson, P. J.—Suit by appellee for damages for the death of his decedent. Amended complaint in ten paragraphs, to each of which a demurrer was overruled, except the fourth and eighth paragraphs, to which demurrers were sustained. Verdict in appellee's favor; also answers to in-

terrogatories. Appellant's motion for judgment *non obstante* overruled, and judgment on the verdict.

The following facts were found by the jury in answer to interrogatories: Appellant had three tracks at the Newman street crossing. Decedent approached the tracks from the south, and went upon the right of way near the center of the street, and over the most southerly track, riding a bicycle. There were cars standing upon the most southerly track, so that a person approaching from the south could not see a locomotive approaching on the main tracks from either direction, and on the west side these cars extended two-thirds of the way over the sidewalk. The distance between the north rail of the most southerly track and the south rail of the most northerly track is twenty-six and two-tenths feet; from the north rail of the most southerly and the south rail of the track next north of it is twelve and nine-tenths feet; from the center of the most southerly track to the center of the track next north is seventeen and six-tenths feet; and from the center of the middle track to the center of the most northerly track, thirteen and three-tenths feet. The three tracks were parallel, and the most northerly track and the one south of it extended from Newman street westward, 2,290 feet or more. Decedent was killed at 6:20 p. m. May 26, by being struck by a locomotive from the west on the most northerly track. The locomotive was running backwards. No bell was ringing, and no watchman was on the rear end. There were city ordinances in force prohibiting a greater speed than four miles an hour, also the running backward of a locomotive without a watchman on the rear end, and also running a locomotive in the city without ringing the bell while the same was moving. Appellant had established and operated, for more than a year previously, a system of warning bells at this street crossing to warn travelers of approaching trains, but during that entire day they were out of order and not ringing, and did not ring as the locomotive approached the crossing. Decedent dis-

mounted from his bicycle before he reached the place where he was struck, and at the time he was killed was in full possession of all his faculties, and as he approached Newman street he used his senses of sight and hearing, and acted as an ordinarily prudent man would under the circumstances and conditions surrounding him at the time. Before he went upon the tracks at Newman street he used his senses of sight and hearing, and did not see or hear anything that warned him of the approaching locomotive. His view along the main tracks was obstructed by the cars on the south track until he had crossed the track. He knew of the system of warning bells, and relied on the fact that they were not ringing, in attempting to cross the track. Decedent, while exercising his senses of sight and hearing as an ordinarily prudent man would under the circumstances in which he was placed, was induced to enter upon the tracks by reason of the warning bells not sounding. "Was said Trayford, while acting upon such inducement, suddenly and unexpectedly confronted by an approaching locomotive of the defendant running backward at a speed of thirty miles an hour, and did said Trayford, when thus confronted by what he believed to be sudden and impending peril, use his senses of sight and hearing, and act as an ordinarily prudent man would have done under the circumstances surrounding him? Ans. Sense and hearing, yes. Speed of engine not so fast." "On the 26th day of May, 1897, at the time of the collision of defendant's locomotive with Trayford, could not one crossing the tracks of defendant at Newman street from the south, and after passing the most southerly of the tracks, and becoming free from obstructions upon it, see to the westward, free from obstruction, an approaching locomotive at any point west of Newman street, within a distance of more than 2,200 feet, before he would need to go upon the middle track or north track of the defendant at said crossing? Ans. Yes." "If Trayford crossed the defendant's track from the south side thereof, and if his view was ob-

structed by cars upon the most southerly track while he was crossing the same, could he not, after passing such obstruction, have looked to the westward, and seen the defendant's locomotive approaching, before he went upon the track upon which he was struck, in time to have avoided the collision? Ans. Yes, had he not depended on the warning bells." "If you answer the last interrogatory in the negative, state what obstruction or circumstance prevented his looking to the westward, and seeing the approaching locomotive after passing the obstruction upon the first track, and before going upon the track upon which he was struck. Ans. He depended on warning bells." "Did Trayford, after crossing the most southerly of defendant's tracks, if he did cross the same, look or listen toward the west from Newman street to see or hear the approach of a locomotive or train? Ans. No evidence." "If you answer the last interrogatory in the affirmative, state at what distance from the north line of the south track he was looking and listening. Ans. No evidence."

The averments of the complaint that appellant was negligent, and that appellee's decedent was free from any fault contributing to his injury, are found by the general verdict in appellee's favor to be true. There is nothing in the answers to the interrogatories that conflicts with the finding of the general verdict that appellant was negligent. But it is insisted by counsel for appellant that the facts disclosed by the answer require the court to rule, as a matter of law, that decedent was guilty of contributory negligence.

The jury found that appellant had established and operated, for more than a year previous to the time in question, a system of warning bells at this crossing to warn travelers of approaching trains. No legal duty rested upon appellant to establish and maintain such bells, but as it in fact had done so, and decedent knew of the bells, he had the right to presume they would ring if a train or locomotive was approaching the crossing; and, if they did not ring, he

could presume that the way was clear. *Pennsylvania Co.* v. *Stegemeier*, 118 Ind. 305, 10 Am. St. 136.

Although the signal bells were maintained for the purpose of warning travelers, which fact decedent knew, and although decedent had the right to presume that no train or locomotive was approaching, because the signal bells were not ringing, yet this did not excuse him from the use of his senses of sight and hearing to ascertain for himself whether a train or locomotive was, in fact, approaching. The failure to give the signals raised the presumption of safety, but such failure was no more than a circumstance which could properly be taken into consideration in determining the ultimate question of whether he did exercise the degree of care required or not. And, in determining whether he did exercise such care, his conduct at the time is to be judged in the light of such presumption. *Cleveland, etc., R. Co.* v. *Harrington*, 131 Ind. 426; *Pennsylvania Co.* v. *Stegemeier*, 118 Ind. 305; *Baltimore, etc., R. Co.* v. *Conoyer*, 149 Ind. 524; *Louisville, etc., R. Co.* v. *Williams*, 20 Ind. App. 576. So that, although there was a failure to give the signals, he was still required to look for an approaching locomotive if by looking he could have seen it, and he was required to listen for an approaching locomotive if by listening he could have heard it, and his failure to do so was negligence. And when the jury say that after he had passed the obstruction upon the most southerly track, and before he went upon the track upon which he was struck, he could have looked to the westward and have seen the locomotive approaching in time to have avoided the collision, had he not depended on the warning bells, they are not excusing the omission of the duty resting upon decedent to look for a train or locomotive before going upon the track. The duty to look still rested upon him, notwithstanding the signals were not given, and if he had looked he could have seen the locomotive in time to have avoided the collision.

It is true, the jury find by the general verdict that decedent looked and listened for approaching trains or locomotives before passing upon the track where he was killed, but when they say there is no evidence that after crossing the most southerly track he looked or listened toward the west from Newman street to see or hear the approach of a locomotive or train, they are admitting that their finding in the general verdict that he did look and listen has no evidence to sustain it.

The facts in the case at bar are very similar to those in the case of *Chicago, etc., R. Co.* v. *Thomas*, 155 Ind. 634. The conclusion reached in that case is controlling here, and necessarily requires a reversal of the judgment in this case.

Judgment reversed, with instructions to sustain appellant's motion for judgment on answers to interrogatories.