(82 South. 534)
BIRMINGHAM SOUTHERN R. CO. v. HARRISON. (6 Div. 767.)

(Supreme Court of Alabama.   Jan. 16, 1919. On Rehearing, April 10, 1919.)

1. NEGLIGENCE ⬤➡93(1) —NEGLIGENCE OF DRIVER OF AUTOMOBILE IMPUTABLE TO PASSENGER.

The negligence of an automobile driver in failing to stop, look, and listen before crossing a railroad track is not imputable to a passenger having no control over the car or driver, though known to be careless and incompetent.

2. RAILROADS ⬤➡327(12)—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE PASSENGER.

An automobile passenger having no control over the car or driver and unaware of his intention to go upon a railroad without stopping, looking, and listening, is not negligent in failing to warn him of an approaching train.

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 198 Ala. 102.

**3. APPEAL AND ERROR 🔑1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

In an action for an automobile passenger's death in a collision at a crossing, failure to allow defendant's engineer to state whether or not he had time before getting to the automobile to put sand on before reaching for the air brake was not reversible error, where the matter was practically given in his subsequent statements.

**4. RAILROADS 🔑347(2)—CROSSING ACCIDENT —EVIDENCE— ADMISSIBILITY —ENGINEER'S KNOWLEDGE OF THE CROSSING.**

In an action for death at a crossing, testimony of defendant's engineer that he was familiar with the crossing and knew that people were in the habit of darting across in front of his engine is competent in support of a count for wanton negligence or willful injury.

**5. RAILROADS 🔑350(33) — CROSSING ACCIDENT—QUESTIONS FOR JURY—SUBSEQUENT NEGLIGENCE.**

In an action for death at a crossing, evidence held to justify court's refusal to withdraw the issue of subsequent negligence from the jury.

**6. RAILROADS 🔑350(34)—CROSSING ACCIDENT—QUESTIONS FOR JURY—WANTON INJURY.**

In an action for death at a crossing which defendant's engineer knew was frequently used, where the evidence as to the speed of the train and as to the giving of signals was conflicting, the question of willful or wanton injury was for the jury.

**7. NEGLIGENCE 🔑56(1) — "PROXIMATE CAUSE."**

"Proximate cause" is correctly defined to mean the direct efficient cause of injury as distinguished from the indirect remote cause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**8. APPEAL AND ERROR 🔑928(2)—REVIEW—CONSTRUCTION OF INSTRUCTION.**

In the matter of charges susceptible of two constructions appellate courts indulge the construction which will sustain rather than condemn.

**9. TRIAL 🔑246—INSTRUCTIONS—EXPLAINING OTHER INSTRUCTIONS.**

The giving of plaintiff's charges explanatory of defendant's charge as given, held proper, since it is not necessarily reversible error to give ambiguous or misleading charges properly explained in other instructions given at the request of the party supposing himself prejudiced thereby.

**10. NEGLIGENCE 🔑136(9)—QUESTIONS FOR JURY—INFERENCES.**

The question of negligence vel non is for the jury where inferences are to be drawn to make the category complete.

**11. RAILROADS 🔑330(2), 346(5)—CROSSINGS —CONTRIBUTORY NEGLIGENCE—AUTOMATIC SIGNALS—PRESUMPTIONS.**

A traveler, though warranted in giving some degree of reliance upon an automatic signal at a crossing, must use such care as an ordinarily prudent man would under like conditions, and in case of his death the presumption that he exercised reasonable care obtains.

**12. RAILROADS 🔑350(32)—CROSSING ACCIDENT — QUESTION FOR JURY — PROXIMATE CAUSE.**

In an action for an automobile passenger's death in a collision at a crossing, the proximate cause of the collision held a question for the jury.

**13. RAILROADS 🔑307(3)—CROSSING ACCIDENT—AUTOMATIC SIGNAL SYSTEM.**

In an action for a traveler's death in a collision at a crossing, it was competent to show that, in lieu of the statutory signals, defendant did not give other effective or timely notice by the automatic signal installed and theretofore operated by it.

**14. RAILROADS 🔑346(2)—CROSSING ACCIDENT—SIGNALS—BURDEN OF PROOF.**

A railroad company having installed a mechanical signal at a crossing and educated the public to observe its warning, on failure of the device to act in the absence of notice or warning in lieu thereof, the obligation to rebut the prima facie presumption of negligence under Code 1907, § 5476, rests on the company.

**15. RAILROADS 🔑348(1)—CROSSING ACCIDENT—EVIDENCE TO SUPPORT VERDICT.**

In an action for death at a crossing, held, that the verdict for plaintiff was not against the weight of the evidence.

### On Rehearing.

**16. PLEADING 🔑192(3)—DEMURRER—ALTERNATIVE PLEA OF CONCLUSION.**

In an action for death at a crossing, a plea as to intestate's neglect of duty in the alternative which was a mere conclusion held insufficient as against a demurrer.

**17. RAILROADS 🔑344(1)—CROSSING ACCIDENT—PLEA OF CONTRIBUTORY NEGLIGENCE.**

In an action for death of an automobile passenger at a crossing, plea of contributory negligence held bad in failing to set up facts from which the duty arose upon the part of deceased to warn the driver or protest against his going forward upon the track.

**18. RAILROADS 🔑330(2)—CROSSING ACCIDENT—AUTOMATIC SIGNALS—DUTY TO KEEP IN REPAIR.**

A driver knowing of an automatic gong at a crossing has a right to some extent to rely upon its being rung, and it is the railroad's duty to keep it in working condition or give notice that it is not working, and its failure to give warning is a circumstance bearing upon the railroad's negligence and the conduct of driver.

**19. RAILROADS 🔑350(32)—CROSSING ACCIDENT—AUTOMATIC SIGNALS—QUESTION FOR JURY—PROXIMATE CAUSE.**

In an action for an automobile passenger's death in a collision at a crossing, whether or not driver knew of the automatic gong and had the right to rely upon it to any extent and

. whether or not its failure to sound was the proximate cause of the accident *held* to be a question for the jury.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action by Mrs. Mary E. Harrison, as administratrix of the estate of J. F. Mackey, against the Birmingham Southern Railroad Company for damages for the death of her intestate in a collision between an automobile in which intestate was riding and an engine of the defendant. Judgment for the plaintiff in the sum of $22,500, and defendant appeals. Affirmed.

The pleadings and the facts sufficiently appear from the opinion of the court.

The following are the charges referred to in the opinion:

Defendant's given charge 10:

I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence that Wetzel negligently failed to stop, look, and listen for the approach of trains at a place where the approach of the train could be seen or heard, and without stopping, looking, and listening negligently drove his jitney onto the railroad track, and that such negligence on the part of Wetzel was the sole proximate cause of the death of plaintiff's intestate, then your verdict must be for the defendant.

Plaintiff's given charges:

(1) The court charges the jury that the word "sole," as used in charge number 10, means unaccompanied by any negligence on the part of the defendant, its agents or servant, as charged in the complaint.

(2) If you are reasonably satisfied from the evidence that defendant or its servants were guilty of any negligence as charged in the complaint, then you must return your verdict in favor of the plaintiff, however negligent the driver of the automobile may have been.

(3) If you are reasonably satisfied from the evidence that the defendant or the defendant's servant or agent were guilty of any negligence as charged in the complaint, then the jury must return their verdict in favor of the plaintiff, notwithstanding the driver of the automobile was guilty of negligence, and notwithstanding said negligence of said driver of said automobile proximately contributed to cause said train to collide with said automobile, and proximately contributed to cause intestate's death.

Defendant's refused charges:

. (6) I charge you, gentlemen of the jury, that if you believe the evidence in this case, there was no duty upon the defendant railroad company to maintain an electric bell at the crossing at which this accident happened.

(7) I charge you, gentlemen of the jury, that defendant was under the duty of giving timely notice of the approach of its trains at the crossing to people using the road at the crossing; and I further charge you that, if you are reasonably satisfied from the evidence that such notice was given in this case by blowing the whistle on the engine a quarter of a mile before the train reached the crossing and immediately after blowing the whistle, by ringing the bell on the engine continuously until the train reached the crossing, then you cannot find for the plaintiff on account of the failure of the electric gong at the crossing to ring, if you believe from the evidence that there was such failure of the gong at the crossing to ring.

(8) I charge you, gentlemen of the jury, that the defendant was under the duty of giving timely notice of the approach of its trains to the crossing to people using the crossing; and I further charge you that, if you are reasonably satisfied from the evidence that such timely notice was given in this case by blowing the whistle on the engine a quarter of a mile from the crossing, and immediately thereafter by ringing the bell on the engine continuously until the approach of the train, by ringing the gong at the crossing, this would not constitute a ground for recovery in this case.

(9) I charge you, gentlemen of the jury, that in the case where the railroad track crosses a public road there are mutual duties enjoined by the law upon the railroad company operating trains across the crossing. It is the duty of persons using the road at the crossing to stop, look, and listen for the approaching trains before going onto the railroad track at a place where the approach of the train can be seen or heard, and it is the duty of the railroad company to give timely notice of the approach of its trains at the crossing to people who are themselves approaching the railroad track in the exercise of reasonable care; and I further charge you that, if you are reasonably satisfied from the evidence in this case that the defendant gave timely notice by blowing the whistle on the train for a quarter of a mile before the train reached the crossing, and immediately thereafter by ringing the bell continuously until the train reached the crossing, then the railroad would have fully discharged this duty of giving the required notice of the approach of its train to the crossing.

(11) I charge you, gentlemen of the jury, that if they believe the evidence, the silence of the crossing gong, if they believe from the evidence that the gong was silent, was not the proximate cause of the death of plaintiff's intestate.

(12) I charge you gentlemen of the jury, that if you believe from the evidence that the crossing gong was silent at and before the time of the accident, such silence of the gong would not amount to an invitation to persons using the road approaching the crossing to go onto the railroad track without first stopping, looking, and listening for the approach of the trains to the crossing.

Percy, Benners & Burr, of Birmingham, for appellant.

W. A. Denson, of Birmingham, for appellee.

THOMAS, J. The suit is for personal injury under the Homicide Act. Code, § 2486. The complaint contains counts for simple negligence, for subsequent negligence, and for wanton, willful, or intentional conduct.

Defendant pleaded the general issue to the several counts and special pleas 2 and

3 to the first count. The second plea sought to allege contributory negligence on the part of plaintiff's intestate in his riding in an automobile with a driver by him known to be careless, reckless, and incompetent, and in that said driver negligently failed to stop, look, and listen before crossing the railroad track of the defendant at the time of the injury in question. The third plea sought to allege contributory negligence in plaintiff's failing to warn the driver of the automobile of the approach of the train, or in failing to make protest to said driver, "or to make such other effort which she [he] reasonably could have made to avoid being carried onto the track," etc.

[1] Among other grounds of demurrer to plea 2, it was urged that the carelessness, recklessness, or incompetency of said Wetzel (the driver), which was averred to have been known to the intestate, was not averred to be that carelessness, recklessness, or incompetency which proximately contributed to intestate's death. In support of the sufficiency of this plea is cited Bresee v. Los Angeles Tract. Co., 149 Cal. 131, 85 Pac. 152, 154, 5 L. R. A. (N. S.) 1059; Lawrence v. Sioux City, 172 Iowa, 320, 154 N. W. 494; Meenagh v. Buckmaster, 26 App. Div. 451, 50 N. Y. Supp. 85.

In the Bresee Case the Justice said:

"Although the rule is * * * that a person who is injured while riding in a vehicle driven by another is not chargeable with the contributory negligence of the driver, in which he did not participate, yet such person is not absolved from all personal care, but is required to exercise ordinary care to avoid the injury. * * * The character and habits of the driver of the carriage with respect to similar dangers, if known to the plaintiff, would naturally have some effect on her own conduct, on the particular occasion, in keeping a lookout for the danger herself, in giving him warning, and in enjoining on him a prudent course, and in order to enable the jury to determine whether or not she exercised ordinary care in that respect, it was proper to give evidence of such character and habits, coupled with proof of knowledge thereof on her part. These observations and conclusions, however, are not applicable to the evidence of the driver's previous habits of driving with a loose rein, or of holding the reins loosely in one hand. These habits would not tend to prove either a careless habit of driving in front of cars too close for safety, or a disposition to do so."

In Lawrence's Case, supra, a witness was permitted to testify (without objection, so far as the record discloses) that intestate had stated, a short while before the accident, that she had ridden with John Knott, the driver at the time of the accident, and that at times she was afraid to ride with him. The rule, however, was adhered to that, when the decedent had nothing to do with the direction in which the automobile was moving, or the route over which it passed, or the operation of the machine, and did not in fact assume or undertake in any manner to exercise control over the driver or the car, the negligence of the driver in operating the car before and at the time of the collision could not be imputed to the occupants of the car.

In the case of Meenagh v. Buckmaster, supra, the holding was that the occupant of an automobile is not absolved from the duty to look out, as far as possible, for his own safety, and if thrown out by running on a pile of rubbish negligently left in the highway, he cannot recover for his injuries sustained of the person who placed the rubbish on the highway, if it is further averred and proven that the driver was so intoxicated, and was driving so recklessly, as that the plaintiff should have perceived it, and the injured man failed to remonstrate or to do anything to avoid the danger, but continued to ride with such driver. When the facts of Meenagh's Case are thus understood, it is apparent that appellant's plea 2 failed to come within the rule there announced.

However, we shall show that the rule announced in Meenagh's Case was refused extension by the courts of New York. In Bergold v. Nassau Elec. R. R. Co., 30 App. Div. 438, 446, 52 N. Y. Supp. 11, 16, it was held that an instruction to the jury that plaintiff was chargeable with the negligence either of herself or of the driver, as she undertook to direct his movements, was erroneous, since plaintiff had no authority over the driver, and her words to him must be understood as that of caution rather than of command. The evidence shows that plaintiff, riding in a buggy by invitation of the driver, who sat at her right and appeared to be a competent driver, saw a car a long block off on an avenue which they were to cross, and when about 25 feet from the tracks she cautioned the driver to "ride slow." The justice adverted to the fact that Meenagh's Case was limited to its peculiar facts, that the driver was intoxicated, or his manner of driving was at the time so heedless or careless that Meenagh should have perceived it, and remonstrated with the driver, and that for this reason he was held chargeable with contributory negligence in "continuing to ride" in the vehicle. The justice adhered to the general rule, saying:

"There are no cases which impute to the guest liability for the negligence of the driver; and it is only where the passenger, riding at the invitation of another, has neglected some duty with which he was charged, in exercising that reasonable care which the law demands at all times, that the courts have refused him relief when he has sustained injury through the negligence of others. * * * The rule is different where the driver is the servant or agent of the person injured, or where both parties are engaged in a common employment (Smith v. N. Y. C. & H. R. R. Co., 4 App. Div. 493 [38 N. Y. Supp. 666, 39 N. Y. Supp. 1119]; Donnelly v. Brooklyn City R. R. Co., 109 N. Y.

16 [15 N. E. 733], but this has no bearing upon the case at bar, and it is not necessary to consider the question further."

Addressing himself to this subject, Mr. Justice Ingrahm, of the Appellate Division, more recently said:

"The duty which is imposed upon a passenger in a vehicle crossing a steam railroad track and the question as to the extent that a passenger in a vehicle is precluded from recovering by reason of the negligence of the driver or person operating the motive power of the vehicle have been * * * discussed, but it is settled in this state that the contributory negligence of the driver or operator of the vehicle is not chargeable against a passenger, but that in such a case the passenger is to be judged by the duty that the law imposes upon him under the circumstances existing at the time of the accident. * * * But it seems to me evident that, in determining in each particular case whether or not a failure to look or listen was negligence that contributed to the accident, the age, condition, and situation of the plaintiff, the existing circumstances and the condition in which the plaintiff was as she approached the track are to be considered in determining whether under the particular circumstances of the case a failure to look and listen was as a matter of law contributory negligence. It is clear that it is not in every case that a failure to look and listen would be negligence, as in the case of a passenger in a street car approaching a railroad track where the car is entirely under the control and management of those charged with its management, or in the case of a very young child in a conveyance approaching the track." Noakes v. N. Y. C. & H. R. R. Co., infra.

The rule of Meenagh v. Buckmaster, supra, was refused extension as sought by the dissenting justice, in Noakes v. N. Y. C. & H. R. R. Co., 121 App. Div. 716, 719, 720, 106 N. Y. Supp. 522, and in Venuta v. N. Y. W. & C. T. Co., 87 App. Div. 566, 84 N. Y. Supp. 544.

The rule announced by the English courts in the celebrated cases of Thorogood v. Bryan, 8 C. B. 115 (English Common Law Rep. 1840), Cattlin v. Hills, 8 C. B. 123 (1849), and Armstrong v. Lancastershire & Yorkshire Ry. Co., Law Rep. 10 Ex. 47, of imputing negligence of the driver or owner of a vehicle to occupants without the latter's personal cooperation or encouragement, has been overruled in the English Courts of Appeal in The Bernina (2) 12 Law Reports of Probate Division (1887) pp. 58–99, and departed from by the courts of many American states. Schultz v. Old Colony Street R. Co., 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402, and notes; Christopherson v. Minn., St. P. & St. M. R. Co., 28 N. D. 128, 147 N. W. 791, L. R. A. 1915A, 761, Ann. Cas. 1916E, 683, and notes; Rebillard v. Minn., St. P. & St. M. R. Co., 216 Fed. 503, 133 C. C. A. 9, L. R. A. 1915B, 953, and notes; Knoxville Ry. & L. Co., v. Vangilder, 178 S. W. 1117, L. R. A. 1916A, 1111, 1115.

Mr. Justice Field pointed out the error of the Thorogood Case, supra, for the United States Supreme Court, in Little, Rec'r, v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652 (1886), 11 Rose's Notes U. S. Rep. 36, and Mr. Justice Somerville noted the fact (Elyton Land Co. v. Mingea, 89 Ala. 521, 7 South. 901) that Judge Goldwaite did not follow this rule in Otis v. Thom, 23 Ala. 469, 58 Am. Dec. 303, and Chief Justice Stone did not in Georgia Pacific Railway Co. v. Hughes, 87 Ala. 610, 6 South. 413.

A recent statement of the rule prevailing in this jurisdiction in its application to collisions with automobiles resulting in injury to passengers thereon, was by Chief Justice Anderson, as follows:

"The doctrine is well settled in this and most of the other states, as well as by the federal courts, that the contributory negligence of one in charge or control of a train, car, or other vehicle cannot be visited upon a person who is a passenger therein, whether for reward or not, unless the person so riding has charge or control of the vehicle, or over the person driving or operating same." Birmingham-Tuscaloosa Utilities Co. v. Carpenter, 194 Ala. 141, 69 South. 626; L. & N. R. R. Co. v. Calvert, 170 Ala. 565, 54 South. 184; Birmingham R. R. Co. v. Baker, 132 Ala. 515, 31 South. 618; North Ala. Trac. Co. v. Thomas, 164 Ala. 191, 51 South. 418; Elyton Co. v. Mingea, 89 Ala. 521, 7 South. 666.

In Central of Georgia v. Jones, 195 Ala. 378, 380, 381, 70 South. 729, 730, the defendant's pleas A and B set up negligence on the part of the plaintiff in failing to stop, look, and listen, though the horse was being driven by another, and there was no averment that she controlled the driver of the vehicle. The court said:

"The pleas attempt to charge the plaintiff with performing the duty of the driver and of negligence for failing to keep a lookout, when it was the duty of the driver to do so and not the plaintiff. Had the plaintiff known of the approach of the train and failed to warn the driver, who was unconscious of the danger, or had she discovered it in time to extricate herself and failed to do so, she could probably not recover under count 1."

The long rejected rule of Thorogood v. Bryan, supra, will not now be given application as sought by appellant's pleadings.

[2] Demurrer to plea 2 challenged the failure of that plea to aver facts showing contributory negligence of plaintiff's intestate immediately before and at the time of the injury that contributed to that injury. The demurrer to plea 3 points to the failure of the plea to aver that intestate had authority or control over the driver or over said automobile in which they were riding at the time of the accident, or to aver that the intestate was aware of the intention of said driver to go upon the track of the railroad at the time and place where the accident occurred without

first stopping, looking, and listening, or to aver what effort intestate could reasonably have made to avoid being carried onto said track at that time and place, or that effort, if made, would have been effective in conserving intestate's safety. The trial court properly sustained demurrer to pleas 2 and 3 as answers to count 1.

[3] The following question was propounded to Engineer Gorff, to which objection was sustained:

"I will ask you whether or not you had time before getting to the automobile to put your sand on before you reached your air brake."

A material question for decision was whether, after becoming aware of the instant peril, the engineer in charge used all the means at his command skillfully and in proper order to avert the injury; that is, did what a reasonably prudent engineer (like circumstanced) would have done to avert injury. Brown & Flowers v. Central of Georgia Railway Co., 197 Ala. 71, 74, 72 South. 366; B. R., L. & P. Co. v. Morris, 163 Ala. 190, 209, 50 South. 198; L. & N. R. R. Co. v. Young, 153 Ala. 232, 240, 45 South. 238, 16 L. R. A. (N. S.) 301; Ala. City, G. & A. Ry. Co. v. Lumpkin, 195 Ala. 290, 70 South. 162; L. & N. R. R. Co. v. Holland, 173 Ala. 675, 55 South. 1001. The matter sought to be elicited by this question was practically given in the witness' statement of fact and of opinion as follows:

"I was 20 or 30 feet from the crossing at the time he came from behind the bank; as soon as I saw him I shoved my throttle off, put my brake on, and went after my sand." "There was nothing else I could have done in the time I had at my disposal after I saw the automobile appear to have stopped the train any quicker than I did." "There was nothing wrong with the engine or any of its appliances." "The reason why I never stopped the train any quicker was because I could not get to my sand. I could not get to it under the circumstances." "In the time I had when the automobile first darted out from the bank, I did everything I could to stop the train." "I did not have time to put it [the sand] on until after I had shut the throttle off."

No reversible error was committed by the trial court by failure in the first instance to allow the witness to answer the question propounded. Pace v. L. & N. R. R. Co., 166 Ala. 519, 52 South. 52; A. G. S. R. R. Co. v. Yount, 165 Ala. 537, 546, 51 South. 731; Williams v. A. E. & G. Co., 164 Ala. 84, 96, 51 South. 385; B. R., L. & P. Co. v. King, 149 Ala. 504, 42 South. 612; Reaves v. Maybank, 193 Ala. 614, 621, 622, 69 South. 137.

[4] Assignment of error No. 12 challenges the court's refusal to sustain objection to the following question and the answer thereto:

"I will ask you if it is not a fact that you knew the character of the crossing, and you said 'Yes.' Didn't you know it to be such a cross-

ing people were in the habit or custom of darting across in front of your engine as you approached the crossing?"

The answer of the witness was in the affirmative. In connection with the other evidence, this answer was competent in support of the count for wanton negligence or wilful injury on the part of the engineer in charge of the train while immediately approaching and passing the point of the collision. Southern Railway Co. v. Smith, 173 Ala. 697, 706, 55 South. 913; B. S. R. Co. v. Fox, 167 Ala. 281, 285, 52 South. 889; 1 Wigmore on Ev. §§ 92, 97.

[5] There being evidence tending to establish plaintiff's cause of action as stated in count 2, the court properly declined to withdraw the issue of subsequent negligence from the jury, as sought by defendant's refused charge 3. Amerson v. Coronoa, etc., Co., 194 Ala. 175, 69 South. 601; Tobler v. Pioneer, etc., Co., 166 Ala. 482, 517, 518, 52 South. 86. On this point the plaintiff's evidence tended to show that the engine and tender striking plaintiff's intestate was three or four rail lengths from the crossing when the driver of the automobile first saw it; that at that time (when the driver of the automobile first saw the engine) the front wheel of his automobile was just going over the rails towards Mulga, a rail's length being 30 or 33 feet, making the distance indicated from 90 to 132 feet; that while the other part of the automobile (from front wheel to impact) was passing over the track the defendant's cars traversed the aforesaid distance, and struck "the back wheels" of the automobile; that, going in the direction in which the automobile was proceeding, one would have to get within "something like about 11 feet of the track [of the railway] before he could see up the track." The evidence for defendant, detailed by its engineer in charge of the engine and tender causing the injury, among other things, was that he saw the automobile that got struck "just before it got struck"; that at the time he saw it, as near as witness could say, he was "about 20 or 30 feet from the crossing to which the automobile was running." The witness further explained that there was a cut on the side from which the train approached that prevented witness from seeing the automobile earlier than when the same came out from behind the cut. Witness was here shown a photograph, of which he explained:

"This indicates the bank the automobile came from behind, and I was 20 or 30 feet from the crossing at the time he came from behind the bank. As soon as I saw him I shoved my throttle off, put my brake on, and went after my sand. That did not immediately stop the train; the train ran some distance; it struck the automobile; it ran about 200 feet after it struck the automobile. I remember where the last coach was in regard to the crossing when the

engine finally came to a stop; the rear end of the coach was about 5 or 10 feet from the crossing. There was nothing else I could have done in the time I had at my disposal after I saw the automobile appear to have stopped the train any quicker than I did; there was nothing wrong with the engine or any of its appliances."

On redirect examination the engineer said of the locus in quo, of the collision, and of his actions in attempting to avoid the same:

"You could see a man standing right on the Mulga crossing about 300 or 400 feet before you got to him. The tender does not obstruct your seeing between 300 and 400 feet away; nothing obstructs it. The tender on this occasion did not obstruct me from seeing the automobile when it darted out from behind the bank. I saw the automobile as soon as it darted out from behind the bank. The thing that prevented my using the sand on this occasion before I hit the automobile, I didn't have time to put it on until after I had shut the throttle off; I had one hand on the throttle this way and one on the brake valve, and when I saw him dart out there I was looking this way, and when I saw him dart out over there I shut the throttle off and the brake on and reached down after the sand, but my wheels tripped up. * * * I mean the wheel locked and slided when I put the emergency on. In the time I had when the automobile first darted out from the bank I did everything I could to stop the train."

Is there a substantial conflict in the evidence on such material questions as (1) the exact point at which the engineer first saw the automobile and the distance between it and the point of collision, and (2) the relative rates of speed at which the two vehicles were proceeding to the point of impact? According to the defendant's roadmaster and civil engineer, on the side of the railroad from whence the automobile was approaching it was 17½ feet from the point where the automobile emerged from behind the embankment to the nearest rail (the Mulga rail) of the railroad track at the point of crossing. After the automobile had traversed this distance and had its wheel on the "Mulga rail," according to the driver of the automobile, defendant's engine was from 90 to 132 feet away from the crossing. According to defendant's evidence, when the automobile came from behind the embankment 17½ feet from the track, the engine and tender was only 20 to 30 feet away from the crossing.

The respective speeds of the automobile and the engine and tender were given. According to the evidence of the plaintiff, the automobile was proceeding at something like 5 or 6 miles per hour toward the crossing. According to the evidence of the defendant, its engine was proceeding at the rate of between 15 and 18 miles per hour toward the same, the common point; whereas, according to witnesses for plaintiff, said engine and tender and attached cars approached the crossing at the rate of 50 miles per hour, around a curve, and with the tender in front.

The distance from the point of collision within which the train stopped after the accident was stated by defendant's witness to have been about 200 feet. Plaintiff's witness, Wetzel, touching this point, said that the train ran beyond the crossing, after striking the automobile, something like 17 or 18 rail lengths, and immediately backed back and struck the automobile again. The length of a rail was shown by the testimony to be 33 feet.

According to this latter version of the point where the train stopped after the injury, the engine was proceeding at such a rate that, under the conditions present, it required the distance of 561 feet beyond the point of contact with the automobile within which to come to a stop.

From the engineer's description of the engine's quick response and slowing up after the brakes were applied (as he says he did apply them on the occasion of the accident), conflicting as it is with. the foregoing and other evidence, different inferences could reasonably be drawn by the jury; that is, of the exact period before the collision, or of his actual distance away, when plaintiff's intestate was first seen by defendant's engineer, and of whether or not the engineer thereafter did all that a skillful engineer with a properly equipped engine could and should have done to avoid a collision. From the evidence the jury could reasonably infer subsequent negligence on the part of the defendant's agent in charge of the engine, and that such subsequent negligence was the proximate cause of intestate's death.

Of forceful application to the instant facts is the just observation of the Chief Justice in Louisville & Nashville Railroad Co. v. Calvert, Adm'r, 172 Ala. 597, 602, 55 South. 812, 814, that the delay "of a second or two on the part of the train in reaching the crossing might have enabled" the automobile to clear the track and avoid being struck. L. & N. R. R. Co. v. Moran, 190 Ala. 108, 66 South. 799; Central of Georgia Railway Co. v. Foshee, 125 Ala. 199, 221, 27 South. 1006; Central of Georgia Railway Co. v. Ellison, 75 South. 159, 161.[1] For, if the distance to the crossing from the engine and tender was 35 feet, and the engine's speed was as estimated by defendant's engineer, and the distance to the rail from the automobile was 17½ feet when the automobile was first seen by the engineer, and its speed was that stated by its driver, then it is a mathematical certainty that the engine and tender would have reached the point of collision before the automobile could have arrived on the crossing. Such being the case, it would have been a physical impossibility for the tender of the engine to strike the back wheel or rear portion of the automobile.

It may be further remarked that Engineer Gorff's testimony that the distance from

[1] 199 Ala. 571.

which he first saw the automobile was 35 feet or less was open to reasonable inference by the jury that the indicated distance was that from the engine or the engineer, and not that from the tender attached to and propelled ahead of the engine; the length of the tender beyond and ahead of the engine being 22 to 28 feet.

Thus are emphasized the conflicts in the evidence and the diversity of reasonable inferences deducible therefrom by the jury.

[6] The eleventh assignment of error is rested on the court's refusal to give the general charge in favor of the defendant as to the willful or wanton count. The evidence was without dispute that the crossing was populous, frequently used by vehicles and pedestrians, and that this condition was well known to the engineer in charge. The evidence was in dispute as to the speed at which the train approached the crossing, varying from 15 to 50 miles an hour, and as to whether necessary and proper signals of approach were given, as well as touching the other material facts to which we have adverted. A jury question was presented under the third count. Bailey v. Southern Railway Co., 196 Ala. 133, 72 South. 67; B. R., L. & P. Co. v. Hayes, 153 Ala. 178, 44 South. 1032; A. G. S. B. R. Co. v. Guest, Adm'r, 136 Ala. 348, 353, 34 South. 968; Ga. Pac. R. Co. v. Lee, 92 Ala. 262, 9 South. 230; Central of Georgia Ry. Co. v. Foshee, supra, 125 Ala. 227, 27 South. 1006; M. & C. R. Co. v. Martin, 131 Ala. 269, 30 South. 827.

[7-9] There was not reversible error in giving plaintiff's charges 1, 2, and 3 explanatory of defendant's given charge, denominated 10. The word "as," employed in two of the charges, means "in the same manner; in the manner in which." Negligence is charged in the several counts of the complaint as the proximate cause of intestate's death. Hooper v. Wells Fargo Co., 27 Cal. 11, 85 Am. Dec. 211, 220. In connection with the giving of the special charges, the court correctly defined "proximate cause" to mean the direct, efficient cause of the injury, as distinguished from "the indirect, remote cause." There was no plea of contributory negligence. The purpose of the charges was to prevent a verdict for defendant in event plaintiff had proved, to the reasonable satisfaction of the jury, one of the several counts of the complaint. B. R., L. & P. Co. v. Ryan, 148 Ala. 69, 72, 76, 41 South. 616. Of charges susceptible of two constructions, appellate courts indulge the construction which will sustain rather than condemn. Ala. Cons. C. & I. Co. v. Heald, 171 Ala. 263, 273, 55 South. 181. It is not necessarily reversible error to give ambiguous or misleading charges; proper explanatory instructions should be given at request of party supposing himself prejudiced thereby. Ala., etc., Co. v. Heald, supra, 171 Ala. 273, 55 South. 181; Randle

v. B. R., L. & P. Co., 169 Ala. 314, 53 South. 918; Suell v. Derricott, 161 Ala. 259, 49 South. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Loveman v. B. R., L. & P. Co., 149 Ala. 515, 43 South. 411; N., C. & St. L. Ry. v. Moore, 148 Ala. 63, 41 South. 984.

[10] Assignments of error challenge refusal of the trial court to give written charges requested by defendant Nos. 6, 7, 8, 9, 11, and 12, in which it was sought to instruct the jury of the duty of the defendant to give timely signals before, and at the time of approach to the populous or much-frequented highway crossing in question. The reporter will set out these charges.

The rule of ordinary care and reasonable prudence has been defined in Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 421, 422, 12 Sup. Ct. 679, 682 (36 L. Ed. 485), as follows:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like' terms, as applied to the 'conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court. Railroad Co. v. Pollard, 22 Wall. 341 [22 L. Ed. 877]; Delaware, etc., Railroad v. Converse, 139 U. S. 469 [11 Sup. Ct. 569, 35 L. Ed. 213]; Thompson v. Flint, etc., Railway, 57 Mich. 300 [23 N. W. 820]; Lake Shore, etc., Railway v. Miller, 25 Mich. 274." 12 Rose's Notes U. S. Sup. Ct. Reps. 171, 174.

The question of negligence vel non is one for the jury or one for the court, as declared in the Ives Case, and has been reaffirmed by our court in B. R., L. & P. Co. v. Williams, 158 Ala. 381, 387, 388, 48 South. 93, Reaves v. Maybank, 193 Ala. 614, 618, 619, 69 South. 137, and White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 South. 479.

Judge Stone observed as to when contributory negligence is a question for the court or one for the jury as follows:

"In the modern cases many categories of fact are held sufficient to take from the jury the inquiry of contributory negligence, and direct that

it be ruled on by the court as matter of law. Of course, to come within this rule, the testimony must be sufficient in itself to bring the true and complete state of the inculpating facts before the mind of the court, without the aid of inferences to be drawn, and there must be no conflict in the testimony which proves the conduct relied on as contributory negligence. If inferences are to be drawn to make the category complete, or if conflicting testimony which is pertinent and necessary to the inquiry is to be reconciled or weighed, these, in a law court, are functions of a jury, and cannot be ruled on as matters of law." L. & N. R. R. Co. v. Webb, 90 Ala. 185, 194, 8 South. 518, 521 (11 L. R. A. 674); L. & N. R. R. Co. v. Stewart, 128 Ala. 313, 330, 29 South. 562; Ga. Pac. R. Co. v. Lee, 92 Ala. 262, 267, 268, 9 South. 230; Cent. of Ga. Ry. Co. v. Foshee, supra; Matson v. Maupin & Co., 75 Ala. 312.

A shorthand rendition of this rule, where "inferences are to be drawn to make the category complete," to the effect that "the drawal of inferences from evidence is the jury's province, the court cannot do so," was made by Mr. Justice McClellan in Ledbetter, Adm'r, v. St. Louis & S. F. Ry. Co., 184 Ala. 457, 466, 63 South. 987, 988, 990.

[11] The right of travelers to rely on automatic signals at crossings has been of recent and frequent discussion by the courts. The rule of the cases is that one who proceeds along a thoroughfare to a crossing when and where an automatic signal is known by him to be maintained, while entitled to place or warranted in giving some degree of reliance upon the indication of safety which the signal implies, must nevertheless use such care in addition as an ordinarily prudent man would exercise under like conditions. Thus, if a railroad company has placed a gate, flagman, signal bell, gong, or automatic device at a crossing, and has so long maintained the same to warn travelers of the approach of trains or engines of the danger of attempting to cross that travelers (including plaintiff) have relied, and are authorized to rely, thereon in the exercise of due care, nothing of contradictory indication appearing, the failure of the company to operate the gate, or to flag, or to ring the bell, gong, or other automatic device at the crossing or in lieu thereof to give other due and proper warning of the approach of the train, would not wholly excuse the traveler approaching such crossing from the exercise of a reasonable care and caution such as would ordinarily be exercised by a careful and prudent man under similar circumstances. It would, however, have the effect, in the case of a traveler meeting his death at such crossing, to invoke the presumption that such traveler was in the exercise of reasonable care and caution immediately before and at the time of the collision, unless the other evidence should rebut that presumption. Welch v. B. & O. R. Co., Pennewill (Del.) 140, 76 Atl. 50, 53. It has been held proper, where such automatic signal was maintained at crossings, to show "that it did not work, on both the question of defendant's negligence and of plaintiff's freedom from fault." Henn v. L. I. R. Co., 51 App. Div. 292, 65 N. Y. Supp. 21; Id., 52 App. Div. 625, 65 N. Y. Supp. 1135; Cleveland Co. v. Coffman, 30 Ind. App. 462, 64 N. E. 233, 66 N. E. 179, So. Ind. R. Co. v. Corps, 37 Ind. App. 586, 76 N. E. 902. See, also, on automatic signals at crossings, Cleveland, C., C. & St. L. R. Co. v. Heine, 28 Ind. App. 163, 62 N. E. 455; Headley v. Denver & R. G. R. Co., 60 Colo. 500, 154 Pac. 731; McSweeney v. Erie R. Co., 93 App. Div. 496, 87 N. Y. Supp. 836; Cleveland Co. v. Sivey, 27 Ohio Cir. Ct. R. 248; Conkling v. Erie R. Co., 63 N. J. Law, 338, 43 Atl. 666; Kimball v. Friend's Adm'r, 95 Va. 125, 27 S. E. 901; Tobias v. Mich. C. R. Co., 110 Mich. 440, 68 N. W. 234; Hicks v. N. Y., N. H. & H. R. Co., 164 Mass. 424, 41 N. E. 721, 49 Am. St. Rep. 471; Jacobs v. Atchison, T. & S. F. R. Co., 97 Kan. 247, 154 Pac. 1023, L. R. A. 1916D, 783, Ann. Cas. 1918D, 384.

[12] The question of negligence being one of law for the court "only when the facts are such that all reasonable men must draw the same conclusion from them" (Gardner v. Mich. Cent. R. R., 150 U. S. 349, 361, 14 Sup. Ct. 140, 144 [37 L. Ed. 1107]; Grand Trunk R. Co. v. Ives, supra; Tex. & P. R. Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. 905, 36 L. Ed. 829; White Swan Laundry Co. v. Wehrhan, 79 South. 479[2]), we will examine the evidence as to the conditions at the crossing in question to see if all reasonable men would draw the same conclusion as to the proximate cause of the collision. There was evidence tending to show that the crossing was much frequented, vehicles and passengers crossing every few minutes; that about 100 persons passed within the hour of the accident; that it was dangerous, being in a cut and where people were in the habit or where it was their custom to "dart across in front of the train." The evidence tended further to show that the view of the public road in question was obstructed until about 11 feet of the rails, and then was clear only about two or three rail lengths along the track in the direction from whence the engine came, and that when a person was on the track at the crossing his unobstructed view extended (plaintiff's evidence) about 50 or 60 yards in the direction from whence the engine came around the curve, and by defendant's evidence for 300 or 400 feet, that the crossing was at the end of the curve in the railroad. One of the plaintiff's witnesses testified that a hill or embankment lay along the railroad near the crossing, and when the engine gets behind the same and blows, "you can't hear it unless it is a nice still morning," that is, that "at the crossing I do not [witness did not] think you could

[2] 202 Ala. 87.

hear the whistle real good there"; that the embankment also obstructed the view along the track of a person riding in an automobile along the dirt road. The evidence was to the further effect (for plaintiff) that the engine, with a tender in front of it and pulling three coaches, was running at the rate of about 50 miles an hour, and evidence from which it could be inferred that the whistle was not blown, or the bell on the engine rung, while approaching the crossing or reasonably before the collision; that it blew once or twice just before it stopped. On the other hand, defendant's evidence was to the effect that the statutory signals for approach to the crossing were duly given and could be heard at the crossing, and the engine and train proceeded at not over 15 miles an hour when approaching the crossing. We cannot say from the evidence and reasonable inference to be drawn therefrom that the affirmative charge should have been given by the court at defendant's written request.

[13] As to the maintenance of automatic signals, one of the tendencies of the evidence was that a block or automatic signal was installed at this crossing long before, and that it was not ringing before or after the collision. The charges on the question of such signals, if erroneously refused, worked irreparable injury to defendant. Of this defendant's counsel says in his argument:

"If the engineer of the train, knowing that there was a gong at the crossing and supposing that this gong would ring, ran his train by the crossing at high rate of speed and without blowing his whistle or ringing his bell, a person injured by such train at the crossing could complain, either on account of the failure of the engineer to blow his whistle or ring his bell or on account of the gong to ring. * * * The company having failed to give such timely notice, he could complain that it was not given in either one of these ways."

It was competent to show that in lieu of the statutory signals defendant did not give other effective or timely notice, by the block or automatic signal system installed and theretofore operated by it at the instant crossing, of the immediate approach of the engine to the crossing.

The case of Louisville & Nashville Railroad Co. v. Webb, supra, to the effect that the failure of a watchman to give a signal of danger or free passage did not authorize a traveler to forego his own reasonable precautions for his safety, is not contrary to the view we here express.

[14] The statute (Code, § 5476) makes the railroad company liable for all damages to persons, stock, or other property resulting from a failure to comply with the requirement to give signals by ringing the bell or blowing the whistle at or near the required places, from a failure to observe the statutory regulations at crossings when the tracks of two roads are on the same grade, or from a failure to erect sign boards, and liable for all damages the result of "any negligence on the part of such company or its agents, * * * and the burden of proof * * * is on the railroad company to show a compliance with the requirements of such section, and that there was no negligence on the part of the company or its agents." Code, §§ 5473, 5475, L. & N. R. R. Co. v. Moran, 76 South. 7;[3] L. & N. R. R. Co. v. Jones, 191 Ala. 484, 67 South. 691; L. & N. R. R. Co. v. Rayburn, 192 Ala. 494, 496, 68 South. 356; Knight v. Tombigbee Valley R. R. Co., 190 Ala. 140, 67 South. 238. Though the burden of proof declared by the statute does not take from the plaintiff the burden of proving the circumstances to be such that the statute can apply or cast upon the railroad the burden of proof in case of wanton injury or subsequent negligence (Cent. of Ga. Ry. Co. v. Moore, 75 South. 971[4]), yet, having installed the mechanical signal at public road crossings, and having educated or induced the traveling public (including Wetzel) to observe its warnings or directions, on failure of the device to act, in the absence of other sufficient notice or warning in lieu thereof, the obligation to rebut the prima facie presumption thereupon passes to the railroad or operating company so using or relying on the signal. Analogous reasoning was employed in Vinson v. Southern Bell Tel. Co., 188 Ala. 292, 302, 66 South. 100, L. R. A. 1915C, 450. The same rules obtain where safety gates are employed by transportation companies. Koch v. Southern Cal. R. Co., 148 Cal. 677, 84 Pac. 176, 4 L. R. A. (N. S.) 521, 523, 113 Am. St. Rep. 332, 7 Ann. Cas. 795; Greenwood v. Phil., W. & B. R. Co., 124 Pa. 572, 17 Atl. 188, 3 L. R. A. 44, 10 Am. St. Rep. 614; Rangeley's Adm'r v. Southern Railway Co., 95 Va. 715, 30 S. E. 386; Penn. R. Co. v. Pfuelb, 60 N. J. Law, 278, 37 Atl. 1100; Dawe, Adm'r, v. Flint & P. M. R. Co., 102 Mich. 307, 60 N. W. 838; Romeo v. Boston & Maine R., 87 Me. 540, 33 Atl. 24; Thomp. Neg. § 1614. The rule is the same as to maintaining a flagman. Ala. G. S. R. Co. v. Anderson, 109 Ala. 299, 19 South. 516; L. & N. R. R. Co. v. Stewart, supra, 128 Ala. 330, 29 South. 562; L. & N. R. R. Co. v. Webb, supra. There was no reversible error in refusing defendant's requested charges Nos. 6, 7, 8, 9, 11, and 12.

Frequent use of photographs was indulged in the examination of witnesses, and without reference to these some of the answers are not fully intelligible. As to the failure to introduce the same in evidence and exhibit them to this court, we have not applied the rule of the cases noted in L. & N. R. R. Co. v. Jenkins, 196 Ala. 136, 140, 72 South. 68.

[15] When the whole evidence is considered, we cannot say that the verdict is so excessive as to indicate passion, prejudice,

[3] 200 Ala. 241.    [4] 200 Ala. 213.

partiality, or corruption on the part of the jury (Cobb v. Malone, 92 Ala. 630, 9 South. 738; N., C. & St. L. Ry. v. Crosby, 194 Ala. 338, 347–352, 70 South. 7; Cent. of Ga. Ry. Co. v. White, 175 Ala. 60, 56 South. 574), or that it is against the weight of evidence (B. R., L. & P. Co. v. Dennison, 163 Ala. 46, 50 South. 316).

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

On Rehearing.

THOMAS, J. [16] It may be conceded that plea 3 attempts to set up the independent negligence of the intestate instead of imputing to her the negligence of the driver of the vehicle, but, if such is the case, it possesses numerous and sundry defects, and the plaintiff's demurrer thereto was properly sustained. In the first place, the plea is in the alternative as to the intestate's neglect of duty as to what she should or could have done to have conserved her safety, and one alternative, at least, is a mere conclusion of the pleader; the chain should be tested by its weakest link upon demurrer.

[17] Again, the plea fails to set up any facts from which the duty arose upon the part of the intestate to warn the driver or to protest against his going forward. It avers that the intestate "saw the said track of the defendant for a considerable distance ahead, a distance sufficient to permit the stopping of said automobile before going on said track, and defendant avers that plaintiff's intestate became aware of the fact that a train was approaching said crossing or said track at a said time when there was ample time to permit the stopping of the said automobile from going upon said track," etc. The plea further avers:

"That the view of said track in the direction of the approaching train was so obstructed that the train approaching from that direction could not be seen by a person on the road going the direction plaintiff's intestate was going at said time, without stopping a few feet distant from the track."

While the plea charges that the intestate became aware of the fact that the train was approaching the crossing, it does not charge that she saw same, and the last-quoted part of the plea would negative the fact that she did see the train, as it charges that it could not be seen unless the vehicle stopped a few feet distant from the track, and there is no averment that it so stopped. Therefore, if she did not see the train, how did she become aware that it was approaching the crossing at the time she should have given the warning? Did she hear it approach; if so, how far away was it, a mile, half mile, or at such a point as to make it within

a dangerous distance from one attempting to cross? The plea does not charge that she was aware of the approach of the train at such point or place as to render it dangerous for one to attempt to cross the track. Birmingham R. R. Co. v. Demming, 3 Ala. App. 359, 57 South. 404. (See plea 10.) This case was recognized by this court wherein the plea was distinguished in the case of Hambright v. Birmingham R. R., 77 South. 702.[5] In pointing out the foregoing defects to the plea, which fully justified the ruling of the trial court in sustaining the demurrer thereto, we do not wish to intimate that said plea was not subject to other grounds interposed, or that it was not involved, contradictory, and misleading.

[18, 19] Whether or not this was such a crossing that the statutory signals required would not have sufficiently conserved the safety of the traveling public, and that the defendant was therefore under a legal duty to maintain additional warnings or signals, we need not decide, for the reason that this defendant erected and undertook to maintain an automatic gong to warn travelers upon the highway of the approach of trains at this crossing. Therefore one who knew of this gong had a right, to some extent, to rely upon its being rung or its failure to give a warning, and after the defendant placed the same there it was its duty to keep it in a working condition, or else give notice in some way that it was out of repair or was not working, and its failure to give warning was a circumstance for the jury as bearing both upon its negligence and the conduct of the driver. See note L. R. A. 1916D, 788; 22 R. C. L. p. 1014, § 274. Wetzel, the driver, was engaged at the time in the jitney transfer business, and testified that he was acquainted with the crossing. Photographs also seem to have been used upon the trial showing the nature of the crossing and the gong in question, and it was for the jury to determine whether or not said driver knew of the gong and had the right to rely upon same to any extent, and whether or not its failure to sound was the proximate cause of the accident. In other words, the jury could have inferred that if the gong had sounded the driver may not have proceeded across the track. We cannot, therefore, say as a matter of law that the failure to sound the gong was the proximate cause of the collision, because the driver may not have acted entirely and exclusively upon the failure of the signal, as he stopped and looked and listened and acted upon his own subsequent survey and observation. In stopping and looking and listening he did no more than his legal duty, as the existence of the gong relieved him from resorting to other means of ascertaining that the way was clear and safe; and we cannot say, as a matter of law, that the failure to sound the said gong was not the

_____

[5] 201 Ala. 176.

proximate cause of the injury simply because the driver may also have acted after his own observation. He may have acted upon his own observation to some extent, yet, if the gong had have sounded as it should have done, he may not have proceeded until the danger was over and may have remained where he was until after the train passed the crossing, notwithstanding he did not and could not see and hear it when he looked and listened. True, if the driver knew that the gong was out of repair and was not working, he had no right to rely upon same to any extent; but there is no evidence that this driver knew that the gong was not working at this time. The trial court did not err in refusing the defendant's requested charge 8, which was an attempt to eliminate the failure of the gong to sound as proximate negligence, as this was a question for the jury. In discussing this question and the conduct of the driver in response to the contention that he did not proceed upon the action or nonaction of the gong, and that its failure to sound did not and could not have controlled his conduct, and was not, therefore, the proximate cause of the injury, it must not be understood that it can have a material bearing upon his tributory negligence as imputable to the plaintiff's intestate.

The application for rehearing is overruled.